

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-24-2002

# Fakete v. Aetna Inc

Precedential or Non-Precedential: Precedential

Docket No. 01-2494

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Fakete v. Aetna Inc" (2002). *2002 Decisions.* Paper 668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 24, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2494

STEPHEN FAKETE,

Appellant

v.

AETNA, INC.,
d/b/a AETNA/US HEALTHCARE

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-01391)
District Judge: Honorable John R. Padova

Argued February 7, 2002

Before: SLOVITER and AMBRO, Circuit Judges
SHADUR,* District Judge

(Opinion filed October 24, 2002)

        Andrew M. Smith, Esquire (Argued)
        Marcino, Bowman & Smith
        275 Commerce Drive, Suite 126
        Fort Washington, PA 19034-2408

         Attorney for Appellant

_____

* Honorable Milton I. Shadur, United States District Judge for the
Northern District of Illinois, sitting by designation.


        John M. Elliott, Esquire
        Eric J. Bronstein, Esquire (Argued)
        Raymond J. Santarelli, Esquire
        Elliott, Reihner, Siedzikowski &
         Egan
        925 Harvest Drive, Suite 300
        Blue Bell, PA 19422

         Attorneys for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

We decide whether Stephen Fakete introduced sufficient
evidence to survive summary judgment in his suit against

Aetna, Inc. ("Aetna") under the Age Discrimination in Employment Act ("ADEA"). The District Court ruled that he did not, even though he presented evidence that the supervisor responsible for firing him wanted "younger" employees and warned him that, because of his age, he "wouldn't be happy there in the future." We hold that the Court erred in determining that Fakete failed to offer direct evidence of discrimination under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Accordingly, we reverse its grant of summary judgment in favor of Aetna and remand for further proceedings.

I. Background

Because this case is at the summary judgment stage, we view the record in the light most favorable to Fakete, the non-moving party. Smith v. Mensinger, 293 F.3d 641, 647 (3d Cir. 2002). Fakete began working for U.S. Healthcare ("USHC") as an audit consultant in 1992. USHC merged with Aetna in 1996. At that time Fakete was fifty-four years old and was the oldest audit consultant at USHC. The merger agreement provided that, unless a USHC executive approved, Aetna could not fire any USHC employee until two years after the merger. When this provision expired in July 1998, Fakete was fifty-six years old and three years

2

away from becoming eligible to retire with a substantial pension.

Aetna reorganized its audit department in July 1998. After the reorganization, Thomas Larkin announced that Fakete would be reporting to him. Sometime during the end of July or the beginning of August 1998, Fakete spoke with Larkin. Fakete inquired about his future with the company. According to Fakete, Larkin responded that "the new management [which included Larkin]--that it wouldn't be favorable to me because they are looking for younger single people that will work unlimited hours and that I wouldn't be happy there in the future." A few months later, Larkin issued Fakete a written warning alleging unexplained absences from the workplace. Larkin threatened to place Fakete on "probation" if he did not explain future absences, obtain Larkin's approval before changing his travel plans, and provide Larkin a daily summary of the tasks he completed. On December 7, 1998, three months before Fakete's pension would have vested, Larkin fired him, charging that he violated the terms of the warning, falsified travel expense reports, and failed to reimburse Aetna for personal phone calls charged to his company card.

On June 18, 1999, Fakete timely filed a formal charge with the Equal Employment Opportunity Commission. See Bailey v. United Airlines, 279 F.3d 194, 197 (3d Cir. 2002) (stating that 300-day period for filing charge applies in Pennsylvania). Fakete received a right to sue notice six months later. On March 16, 2000, Fakete sued Aetna in the United States District Court for the Eastern District of

Pennsylvania, alleging, inter alia, that he was terminated and denied a transfer request in violation of the ADEA.[1] The Court entered summary judgment in favor of Aetna on all of Fakete's claims, and he timely appealed. We have jurisdiction under 28 U.S.C. S 1291.

---

1. The District Court had jurisdiction under 28 U.S.C. S 1331. Fakete also alleged ADEA retaliation, ADEA reduction-in-force, and state law claims, but does not raise these claims on appeal.

## II. Standard of Review

We review the District Court's grant of summary judgment de novo. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 566 n.3 (3d Cir. 2002). Summary judgment was proper if, viewing the record in the light most favorable to Fakete, there is no genuine issue of material fact and Aetna is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Bailey, 279 F.3d at 198. "A factual dispute is material if it 'bear[s] on an essential element of the plaintiff 's claim,' and is genuine if 'a reasonable jury could find in favor of the nonmoving party.' " Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 298 F.3d 201, 210 (3d Cir. 2002) (quoting Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)) (alteration in original).

## III. Discussion

The ADEA makes it unlawful, inter alia, for an employer to fire a person who is at least forty years old because of his or her age. 29 U.S.C. SS 623(a), 631(a). To prevail on an ADEA termination claim, a plaintiff must show that his or her age "actually motivated" and "had a determinative influence on" the employer's decision to fire him or her. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). An ADEA plaintiff can meet this burden by (1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in Price Waterhouse,[2] or (2) presenting indirect evidence of

---

2. We have previously recognized that Justice O'Connor's opinion concurring in the judgment represents the holding of the fragmented Court in Price Waterhouse. See, e.g., Anderson v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002).

In the past, we often described employment discrimination cases governed by Price Waterhouse (i.e., based on direct evidence) as "mixed motive" cases, even though we recognized that the adjective was "misleading" because indirect evidence (also referred to as pretext) cases under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), like Price Waterhouse cases, often involve a combination of legitimate and illegitimate motives. See, e.g., Miller v. CIGNA Corp., 47 F.3d 586, 597

discrimination that satisfies the familiar three-step
framework of McDonnell Douglas Corp. v. Green , 411 U.S.
792 (1973).3 See Keller v. Oriz Credit Alliance, Inc., 130 F.3d

_____

n.9 (3d Cir. 1995) (en banc). Our more recent cases, however, eschew
the "mixed motives" label in favor of the more accurate "direct evidence"
description. See Anderson, 297 F.3d at 248; Connors, 160 F.3d at 976.
Yet this description, too, is imprecise. See, e.g., Walden v. Georgia Pacific
Corp., 126 F.3d 506, 513 (3d Cir. 1997) (noting that circumstantial
evidence can support a Price Waterhouse case if it directly reflects the
allegedly unlawful basis for the challenged employment decision).
Further, while courts agree on what is not direct evidence--e.g.,
statements by non-decisionmakers, statements by decisionmakers
unrelated to the contested employment decision, and other "stray
remarks"--there is no consensus on what is. See, e.g., Fernandes v.
Costa Bros. Masonry, 199 F.3d 572, 581-82 (1st Cir. 1999) (surveying
circuit courts' different approaches); Troupe v. May Dep't Stores Co., 20
F.3d 734, 736-7 (7th Cir. 1994) (defining and distinguishing acceptable
forms of direct and circumstantial evidence in employment
discrimination cases). Nevertheless, because this case does not require
us to break new ground, because our Court has used the "direct
evidence" designation in recent cases, and because coming up with a
new term may do more harm than good, we shall use the "direct
evidence" label throughout this opinion.
3. In an ADEA suit alleging unlawful termination, step one of the
McDonnell Douglas framework requires the plaintiff to present evidence
sufficient for a reasonable trier of fact to find each element of a prima
facie case. Keller, 130 F.3d at 1108. Thus the plaintiff must show (1)
that he was at least forty years old, (2) that he was fired, (3) that he was
qualified for the job from which he was fired, and (4) that he "was
replaced by a sufficiently younger person to create an inference of age
discrimination." Id. If the plaintiff offers evidence sufficient to support a
prima facie case, he reaches step two, and the defendant has the burden
of producing evidence that it had "a legitimate, nondiscriminatory reason
for the discharge." Id. If the defendant does not produce such evidence,
the plaintiff wins. Id. But if the defendant satisfies its burden of
production, step three is reached, and the plaintiff must submit evidence
"from which a factfinder could reasonably either (1) disbelieve the
employer's articulated legitimate reasons[,] or (2) believe that an
invidious discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action." Id. (quoting Fuentes v.
Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

While our Court has held that the McDonnell Douglas framework
applies in ADEA cases, see, e.g., id. , the Supreme Court has not decided
this question, though it has assumed arguendo that our approach is
correct. See Reeves, 530 U.S. at 142; O'Connor v. Consol. Coin Caterers
Corp., 517 U.S. 308, 311 (1996).

1101, 1108, 1113 (3d Cir. 1997) (en banc). Though Fakete
maintains that he can survive summary judgment on either
theory, we need discuss only his Price Waterhouse claim.

Under Price Waterhouse, when an ADEA plaintiff alleging

unlawful termination presents "direct evidence" that his age was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered his age. See Price Waterhouse, 490 U.S. at 265-66, 276-77; Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512-13 (3d Cir. 1997). "Direct evidence" means evidence sufficient to allow the jury to find that "the 'decision makers placed substantial negative reliance on [the plaintiff 's age] in reaching their decision' " to fire him. Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (quoting Price Waterhouse, 490 U.S. at 277); see also Anderson v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002) (same). Such evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it" when he made the challenged employment decision. Starceski v. Westinghouse Elec. Corp. , 54 F.3d 1089, 1097 (3d Cir. 1995).

As pointed out, see supra note 2, the adjective "direct" is imprecise because "certain circumstantial evidence is sufficient [to shift the burden of proof regarding causation], if that evidence can 'fairly be said to directly reflect the alleged unlawful basis' for the adverse employment decision." Walden, 126 F.3d at 513 (quoting Hook v. Ernst & Young, 28 F.3d 366, 374 (3d Cir. 1994)) (emphasis in original). One form of evidence sufficient to shift the burden of persuasion under Price Waterhouse is"statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit," Hook, 28 F.3d at 374 (quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)), even if the statements are not made at the same time as the adverse employment decision, and thus constitute only circumstantial evidence that an impermissible motive substantially motivated the decision. See Rose v. N.Y. City Bd. of Educ., 257 F.3d 156, 158, 162

6

(2d Cir. 2001) (holding that supervisor's statements, several months before he demoted employee, that he might replace her with someone "younger and cheaper" were sufficient to shift the burden of persuasion under Price Waterhouse).

With this background, we consider the import of Larkin's statement that he was "looking for younger single people" and that, as a consequence, Fakete "wouldn't be happy [at Aetna] in the future." The District Court concluded in a single sentence, without analysis, that the statement "was a stray remark that did not directly reflect the decisionmaking process of any particular employment decision." We believe that a reasonable jury might disagree.

Aetna acknowledges that Larkin made the decision to fire Fakete.4 Thus the only matter requiring discussion is whether a reasonable jury could find, based on Larkin's statement, that Fakete's age was more likely than not a

substantial factor in Larkin's decision to fire him. We have little difficulty concluding that it could so find.

Viewed favorably to Fakete, the statement shows that Larkin preferred "younger" employees and planned to implement his preference by getting rid of Fakete. Larkin made his statement in direct response to a question from Fakete about how he fit into Larkin's plans. In this context, a reasonable jury could find that Larkin's statement was a clear, direct warning to Fakete that he was too old to work for Larkin, and that he would be fired soon if he did not leave Aetna on his own initiative. See Rose, 257 F.3d at 162.

Cases in which we have deemed a plaintiff 's evidence insufficient to satisfy Price Waterhouse do not support the District Court's ruling. In contrast to the offensive remarks in Hook, which were made by a decisionmaker during conversations that "had nothing to do with" the plaintiff 's job, 28 F.3d at 375, Larkin's statement was about Fakete's prospects for continued employment with Aetna. Unlike the

---

4. Hence this is not a case where the plaintiff relies on statements by a person not involved in the allegedly unlawful decision. See Walden, 126 F.3d at 515-16; Armbruster v. Unisys Corp., 32 F.3d 768, 779 (3d Cir. 1994).

"vague" statement in Walden, which referred to the plaintiffs' "loyalties" without directly referencing the allegedly unlawful decisionmaking criterion, 126 F.3d at 516, Larkin's statement told Fakete unambiguously that Larkin viewed him as a less desirable employee because of his age.5 Finally, we cannot dismiss the statement as merely "random office banter," Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1089 (7th Cir. 2000), or an innocuous "conversational jab[ ] in a social setting," Hoffman v. MCA, Inc., 144 F.3d 1117, 1122 (7th Cir. 1998), as Larkin informed Fakete of his preference for "younger" employees in a serious one-on-one conversation about Fakete's future under Larkin's watch.6

As Fakete has presented sufficient evidence with respect to his unlawful termination claim to survive summary judgment under a Price Waterhouse theory, we need not consider whether that claim may proceed under a McDonnell Douglas theory. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (" '[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.' ") (alteration in original) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)).

Conclusion

Because the District Court resolved a genuine factual dispute over whether Fakete's age was a substantial motivating factor in Larkin's decision to fire him, we reverse

5. Therefore, even if comments an appellate court perceives as "ambiguous" are not enough to get past summary judgment, see Fernandes, 199 F.3d at 583 (holding that employer's remark that "I don't need minorities" was susceptible of a benign interpretation and thus could not constitute direct evidence of discrimination), Larkin's statement contains no ambiguity.

6. We note, however, that the District Court correctly granted summary judgment in favor of Aetna on Fakete's denial-of-transfer-request claim, which was based only on a McDonnell Douglas theory, because Fakete did not offer evidence that Aetna granted a transfer request by a similarly situated younger employee, and thus failed to make out a prima facie case. See Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir. 1994).

8

the Court's grant of summary judgment and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9