James T. KILLEN, Appellant,

v.

MARKETING COMMUNICATION SYSTEMS, INC.

No. 01–4405.

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 2002.

Decided Jan. 31, 2003.

William J. Fox, (Argued), Philadelphia, Pennsylvania, for Appellant.

Anthony B. Haller, (Argued), Pepper Hamilton LLP, Philadelphia, Pennsylvania, for Appellee.

Before BECKER, Chief Judge,
SCIRICA and MCKEE, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

James T. Killen sued his former employer, Marketing Communication Systems, Inc. ("MCS"), asserting claims under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43, § 951 *et seq.* The District Court granted summary judgment in favor of MCS. We will affirm.[1]

## I

MCS provides "database management, telemarketing and fulfillment services to clients in the direct marketing industry." During the time of Killen's employment, MCS operated, among its other units, a Leads Center and a Control Center. The Leads Center processed information received from individuals who were responding to promotional materials distributed to the public. For example, the Leads Center processed information contained on business reply cards sent in response to advertisements. The Leads Center also fulfilled requests made by the individuals responding to the promotional materials. The Control Center was a larger division within MCS. Similar to the Leads Center, the Control Center processed information

---

1. The District Court had original jurisdiction over this matter under 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

and fulfilled requests, but it also performed telemarketing functions.

On July 16, 1990, Killen was employed by MCS as manager of the Leads Center. Killen performed well in his position and received positive reviews as well as yearly salary increases. MCS, however, suffered financial setbacks in 1998 and 1999. As a result, the company believed it was necessary to restructure its operations and to terminate certain employees. Killen was terminated on July 9, 1999. He was fifty-nine years old at the time.

According to MCS, it did not need a manager dedicated exclusively to the Leads Center. Killen's position was eliminated and other employees fulfilled the duties Killen had performed. Richard Shriver, forty-nine years old at the time, was manager of the Control Center. In addition to managing the Control Center, Shriver became responsible for the overall supervision of the Leads Center. Heather Bradley, thirty years old at the time, had been Killen's assistant, and had been performing many of the same functions as Killen. Upon Killen's dismissal, Bradley continued to handle the day-to-day operations of the Leads Center and was given some additional responsibilities.

After filing discrimination charges against MCS with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission, Killen brought suit in federal court. Killen asserted that his termination and the subsequent assumption of his duties by younger employees was the result of impermissible age discrimination on the part of MCS. As noted, the District Court granted MCS's motion for summary judgment.

## II

A plaintiff alleging age discrimination can present either direct evidence of discrimination that meets the requirements of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or indirect evidence of discrimination that satisfies the three-step framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Fakete v. Aetna, Inc.,* 308 F.3d 335, 337–38 (3d Cir.2002). Here we focus on the latter method as Killen offers only indirect evidence in attempting to prove his discrimination claim.[2]

Under the *McDonnell Douglas* framework, the plaintiff first must establish a prima facie case of discrimination. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997). When the plaintiff alleges unlawful termination based on age:

> the prima facie case requires proof (i) that the plaintiff was a member of the protected class, i.e., was 40 years of age or older (*see* 29 U.S.C. § 631(a)), (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination.

*Id.* If the plaintiff proffers evidence sufficient to establish a prima facie case, step two is reached. "The burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." *Id.* If the defendant fails to meet this burden, the plaintiff prevails. If the defendant satisfies its burden, the third step is reached. In order to survive

2. For our purposes, the same analysis is used for Killen's ADEA and PHRA claims. *See,* *e.g., Connors v. Chrysler Fin. Corp.,* 160 F.3d 971, 972 (3d Cir.1998).

summary judgment, the plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994)).

Here, the District Court found that Killen satisfied the first step of the *McDonnell Douglas* framework–that is, Killen established a prima facie case of age discrimination.[3] We assume *arguendo* that this is correct. The District Court also found that MCS proffered a legitimate, nondiscriminatory reason for terminating Killen. Finally, the District Court found that Killen did not rebut MCS's reasoning. We agree with the District Court's assessment regarding the latter two steps of the *McDonnell Douglas* framework.

MCS claims Killen was terminated not because of age-based animus, but because of business realities. In 1998 and 1999, the company suffered financial setbacks, including the loss of certain major accounts. As a consequence, MCS decided to terminate some of its employees and restructure its operations. Specifically, MCS decided to eliminate Killen's position as manager of the Leads Center. Shriver, in addition to managing the Control Center, would generally oversee the Leads Center and Bradley, Killen's former assistant who had significant knowledge of the unit, would be responsible for day-to-day operations. MCS. believed that Shriver, who had proven his ability as manager of the Control Center, was the best candidate for overseeing both the Control Center and the Leads Center. Moreover, Shriver had experience with telemarketing operations-experience that Killen lacked and that MCS believed was key to fostering the company's growth. MCS also believed that, in comparison to the Control Center, the Leads Center was less important to the company's future and required less management. Thus, MCS designated Shriver to oversee the Leads Center, while letting Bradley supervise the daily operations.

Killen counters that his position as manager of the Leads Center was not really eliminated by MCS and that the explanation that his position was consolidated was a pretext for age-based discrimination. Killen claims that thirty year old Bradley became the functional equivalent of the Leads Center manager, taking over virtually all of Killen's duties when he was terminated (except for a small number of managerial duties that Shriver performed).

Killen bases his position on the fact that when asked, "Who has taken over the duties of Mr. Killen since he has been terminated from his employment with MCS?" Bradley responded, "I have."[4] Moreover, Shriver testified that he spent only "an average of five percent, ten percent, maybe on a busy week" tending to the management of the Leads Center. Thus, Killen maintains that Bradley essentially took over his position since she per-

---

**3.** The District Court found that Killen proved he was a qualified employee within the protected age group and his discharge in favor of a younger employee, Shriver, gave rise to an inference of age discrimination. *See Killen v. Marketing Communication Sys., Inc.,* No. 00–3812, 2001 U.S. Dist. LEXIS 19087, at *2–3, 2001 WL 1486218 (E.D.Pa. Nov. 15, 2001).

**4.** In the same deposition, Bradley agreed that billing was the only duty that she performed after Killen left that she had not performed before his termination. Thus, when taken together, Bradley's statements are consistent with MCS's assertion that Bradley was not promoted to Killen's former position, but continued in her role, while assuming a few additional responsibilities.

formed the vast majority of the duties of the Leads Center manager and Shriver had very little to do with the Leads Center. The crux of Killen's argument is that an employer cannot claim that it has legitimately consolidated two positions when one person takes over most of the duties of the terminated employee. Killen contends that there is a genuine issue of material fact, that should have been allowed to go to the jury, as to whether his position was really consolidated or whether he was functionally replaced by Bradley.

However, we conclude that this is insufficient to create a genuine issue of material fact. MCS agrees that Bradley became responsible for the day-to-day operations of the Leads Center with Shriver generally overseeing the unit. Although Shriver may not have spent a lot of time tending to the Leads Center, he was the boss, and as such, he was responsible for the Leads Center, a crucial fact that differentiated his job (and Killen's) from Bradley's. Moreover, in taking over most of Killen's duties, Bradley was performing many of the same tasks she had in the past, not assuming a new position in the company. Thus, we conclude that Killen has not offered sufficient evidence of pretext to raise a genuine issue of material fact.

## III

For the reasons discussed, we will affirm the grant of summary judgment for the defendant.