

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2003

# Longstreet v. Holy Spirit Hospital

Precedential or Non-Precedential: Non-Precedential

Docket 02-4351

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Longstreet v. Holy Spirit Hospital" (2003). *2003 Decisions.* Paper 531.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/531

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

No. 02-4351

———————

MARGARET LONGSTREET,

Appellant

v.

HOLY SPIRIT HOSPITAL

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cv-00309)
District Judge:  Hon. John E. Jones, III

———————

Submitted Under Third Circuit LAR 34.1(a)
May 22, 2003

Before:  SCIRICA, Chief Judge, SLOVITER and NYGAARD, Circuit Judges

(Filed: May 23, 2003)

———————

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff Margaret Longstreet, who brought a Title VII action against her employer, Holy Spirit Hospital ("HSH"), appeals from the District Court's order granting the Hospital's motion for summary judgment. We agree with the District Court that Longstreet has not raised a genuine issue of material fact and we will affirm.

## I.

### Facts and Procedural History

Longstreet's Title VII claim of sexual discrimination against HSH stems from its failure to promote her to the position of Psychiatric Nurse Manager when the position became vacant. Longstreet had worked at HSH as a psychiatric nurse on the In Patient Unit of the Hospital's Behavioral Health Services Unit for fifteen months. The employee vacating the position of psychiatric nurse manager, David Kester, prepared a posting for the position which stated:

> Nurse Manager - Full time day shift in Mental Health Center;
> 2-3 years psychiatric nursing and management experience
> required; BSN preferred; will be responsible to plan,
> supervise and evaluate the interdisciplinary 24-hour operation
> of Inpatient Psychiatric Unit and Crisis Intervention Service.

During Kester's tenure he had assumed responsibility for HSH's Crisis Intervention Service, and this integration between the Crisis Intervention Service and the In Patient Unit was to continue. The posting further described the responsibility of the position to be "planning, administering and evaluating the interdisciplinary 24-hour

2

operation of the Inpatient Psychiatric Unit and Crisis Intervention Service." App at 90. Along with this posting, Longstreet saw another posting in the In Patient Unit which stated:

> Current PA RN licensure required. Minimum two years. Increasingly responsible supervisory experience preferred. BSN preferred. Experience with budget process and policy development/maintenance desirable.

Three candidates applied for the position of Psychiatric Nurse Manager: Greg Abel, Longstreet's supervisor, who had three and one-half years of nursing experience as an RN; Longstreet, who had over thirteen years experience as an RN but only 18 months at HSH at the time the decision was made; and Rhett Bennie, who had less than two years experience as an RN. Bennie did, however, have other supervisory and management experience in both the In Patient Unit and Crisis Intervention Service, was a Psychiatric Nurse Case Manager at the time of his application, has a Bachelor of Arts in Psychology, and had been an employee of HSH for over sixteen years. Each applicant had an RN license, which was the only licensure requirement set forth.

The three candidates underwent a first interview with two interviewers, one of whom was to make the final decision but left Longstreet's interview early. Next was a "panel" interview with five panelists. During this interview one of the panelists, Dr. Petkash, asked Longstreet about the recent birth of her child and what her childcare needs would be. Longstreet was immediately instructed by another panelist not to answer this question as it was inappropriate.

3

The panel unanimously recommended Bennie for the position of Psychiatric Nurse Manager. On deposition, the panelists testified as to their positive impression of Bennie's knowledge of the Crisis Intervention Service and the In Patient Unit, his dealings with employees of both units, and his reputation as a long-time employee of HSH. The panelists expressed concern about Longstreet's lack of experience with the Crisis Intervention Service.

Bennie was the only candidate given a follow-up interview, an interview that is supposed to be given to only the highest candidate but which, Longstreet notes, took place the day of her panel interview.

After learning that Bennie was chosen for the position of Psychiatric Nurse Manager, Longstreet filed a grievance with the Department of Human Resources. Kathy Campbell, the employment relations manager, handled that grievance. She testified that she believed that one of the members of the panel asked inappropriate questions of Longstreet during her interview, but that she had after her investigation concluded that Longstreet had not failed to get the job because she was a female.

Longstreet contends that even after filing a grievance with Human Resources Dr. Petkash continued to inappropriately question her about where her children were and who was watching them, and that these questions were posed in a harassing manner. She also contends that coworkers berated her, calling her a "troublemaker" and "fucking idiot" for having filed a grievance, and that a staff psychiatrist told her she needed a "penis" to be

4

selected for the Psychiatric Nurse Manager position.

After discovery, HSH filed a motion for summary judgment. The District Court held that Longstreet failed to show that her employer's reason for hiring another candidate was pretextual and granted HSH's motion. Longstreet filed a timely appeal.

**II.**

**Discussion**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002). Appellate review over the grant of summary judgment is plenary. City of Erie v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 159 (3d Cir. 1997). All inferences should be drawn in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc. 974 F.2d 1358, 1363 (3d Cir. 1992).

The District Court found, and neither party contests, that Longstreet established a prima facie case of discrimination. In a Title VII case, after establishing a prima facie case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). At this stage the defendant need not persuade the court that it was "actually motivated by the proffered reasons," but need only raise "a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). The plaintiff must then show that

5

"[defendant's] stated reason for [plaintiff's] rejection was in fact pretext." McDonnell, 411 U.S. at 804. This may be accomplished "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. The District Court correctly applied this burden shifting framework and noted that it is at the final juncture where the parties' dispute lies.

On appeal, we must determine whether Longstreet presented enough evidence to cast sufficient doubt upon HSH's proffered explanation as to why Longstreet was not promoted to the position, or support a finding that discrimination was more likely than not a motivating or determining cause of the adverse employment action.

Longstreet asserts that HSH's proffered explanation of Bennie being the most qualified candidate for the position of Psychiatric Nurse Manager is not credible. She points to the various postings and advertisements that were introduced into evidence and contends that while certain credentials and qualifications were preferred, at a minimum two years of experience as an RN nurse was required. Longstreet focuses on the posting which states as follows:

> **Qualifications:** Current PA RN licensure required. Minimum two years. Increasingly responsible supervisory experience preferred. BSN preferred. Experience with budget process and policy development/maintenance desirable.

App. at 148.

The other posting reads:

**Qualifications:** Current PA RN licensure required.  Minimum two years increasingly responsible supervisory experience preferred.  BSN preferred.  Experience with budget process and policy development/maintenance desirable.

App. at 164.

Longstreet argues that what she terms the "original" posting was manipulated to address the fact that Bennie, as a favored candidate, did not have the requisite two-year minimum experience as an RN nurse.  However, Longstreet provides no support for her position that the posting requiring the two-year minimum RN experience was the original and that the other posting was a manipulation.  A plaintiff cannot rely upon "unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment."  Solomon v. Society of Automotive Engineers, 2002 WL 1754409, at *1 (3d Cir. July 30, 2002).

Inasmuch as the principal difference between the two postings is grammatical, the level of experience they required remains ambiguous.  In the face of such ambiguity a level of deference should be given to the judgment of those doing the hiring.  See DeWeese v. DaimlerChrysler Corp., 120 F. Supp.2d 735, 738 (S.D. Ind. 2000) (holding that when advertisement of position requirements is ambiguous employer's explanation of what experience position required is accepted unless direct contradictory evidence exists).

Furthermore, the actual qualifications of a position is not a matter that the courts should determine.  Schaffner v. Glencoe Park District, 256 F.3d 616, 621 (7th Cir. 2001).  Although Longstreet has over thirteen years of experience as an RN nurse and Bennie has

less than two, the panel based its decision to appoint Bennie on a totality of factors. For example, Bennie had a sixteen-year work history at HSH and Longstreet had been there for only eighteen months. It is undisputed that the Hospital's preference was for the Psychiatric Nurse Manager to have Crisis Intervention skills, skills that Longstreet admitted that she almost completely lacked. Longstreet does not contest that Bennie was the more experienced in many of the relevant fields.

In light of Bennie's higher qualifications with respect to a number of relevant factors, Longstreet failed to produce evidence sufficient to compel a finding of pretext. Longstreet had to show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

Longstreet also brought a claim for retaliation, asserting that she suffered adverse action in her employment after she protested not being selected. A discriminatory retaliation claim under Title VII requires that: (1) the employee demonstrate that she engaged in activity protected by Title VII; (2) the employer took adverse action against the employee; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995).

Even assuming that all Longstreet's allegations of harassment are true, she is unable to meet the second requirement. The District Court ruled that the conduct she

8

complains about was not "serious and tangible enough" to rise to the level of an adverse employment action. App. at 16. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997) (holding that "unsubstantiated oral reprimands" and "unnecessary derogatory comments" do not rise to level of adverse employment action). We agree with the District Court that the conduct alleged did not have an impact on her current employment relationship, and is unlikely to have affected her future employment opportunities.

### III.

### Conclusion

For the reasons set forth, we will affirm the judgment of the District Court.

_____

TO THE CLERK:

Please file the foregoing opinion.


 /s/   Dolores K. Sloviter
Circuit Judge