

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2007

# Muzslay v. Ocean City

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1335

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Muzslay v. Ocean City" (2007). *2007 Decisions.* Paper 1412.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1412

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 05-1335, 05-1429
_____

OLIVER MUZSLAY,

Appellant at No. 05-1335

v.

CITY OF OCEAN CITY; HENRY KNIGHT, Mayor;
DOMINIC LONGO, Public Safety Director

_____

OLIVER MUZSLAY

v.

CITY OF OCEAN CITY; HENRY D. KNIGHT, Mayor;
DOMINIC LONGO, Public Safety Director,

Appellants at No. 05-1429

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-04838)
District Judge:  The Honorable Freda L. Wolfson

_____

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

(Filed March 29, 2007)

_____

OPINION OF THE COURT

_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Oliver Muzslay claims that Ocean City, Mayor Henry Knight and Public Safety Director Dominick Longo terminated him because he engaged in protected speech and because of his age. The District Court granted summary judgment in favor of the defendants on all but Muzslay's age discrimination claim under the New Jersey Law Against Discrimination (NJLAD), and dismissed the action for lack of federal subject matter jurisdiction. We will reverse in part, and affirm the remainder.

I.

Oliver Muzslay served the Ocean City Beach Patrol for over 44 years, including 17 as Captain. Beginning in 1998, however, a series of disagreements arose between Muzslay and the City Director of Public Safety, Dominick Longo. First, Longo ordered Muzslay to express Longo's strong displeasure with Assistant Captain Edwin Yust's vote to deny a pension waiver to Patrol medic Kathy Borbeau. Longo later eliminated Yust's position and demoted him. When Muzslay protested Longo's treatment of Yust, Longo removed Muzslay's authority over the hiring and promotion of Patrol lifeguards and

2

excluded him from negotiations with the lifeguard union. Second, Muzslay requested extended lifeguard hours or a shift change to deal with several after-hours drownings, but Longo and other officials denied his requests.[1] Third, Longo ordered Muzslay to vacate his office at the Patrol boat shop, where Patrol vehicles and safety equipment were kept, to make way for a new carpenter named Harvey Jones. Longo later ordered Muzslay to stay away from the boat shop between the hours of 9AM and 5PM, because of Jones' personal animosity toward him. In a memorandum addressed to Longo and Mayor Knight, Muzslay expressed disbelief at the order, complained that Longo left him "powerless," and demanded a meeting with Knight.

A few months later, Longo recommended that Muzslay's position be eliminated. The local newspaper published an article on Muzslay's termination. In the article, Muzslay speculated that he was being terminated because of his objections to Longo's decisions regarding Yust and the drownings. Mayor Henry Knight explained that the City sought "some younger people" to take command of the Patrol. Shortly thereafter, the City

---

1.      A 13 year-old girl drowned on July 3, 1999, while lifeguards were off-duty. Longo agreed to extend hours for July 4, but refused to extend them beyond that date. Another drowning occurred at the same location on July 5. City officials held an emergency meeting and decided to post new warning signs at the beach. Muzslay claims Longo told him to "shut up" at the meeting.

Another drowning occurred in September while lifeguards were off-duty. On May 11, 2000, the City extended lifeguard hours based upon a plan submitted by Assistant Captain Bud McKinley. Muzslay did not participate in preparing McKinley's plan.

offered Muzslay an unconditional reinstatement as Captain for the 2000 season pursuant to The Civil Rights Act of 1964, 42 U.S.C. §2000e (2006) *et. seq.*, and *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982).[2] Muzslay accepted, and remained Captain.

Following his reinstatement, Muzslay claims, Longo staged a summer-long campaign to harass him and weaken his influence over Patrol operations. First, Longo assigned police detective Max Hurst to act as an intermediary between him and Muzslay. Hurst told Muzslay that he could not begin work until he completed a physical exam and qualifying run and swim, told other lifeguards not to give Muzslay access to the Patrol payroll system, and denied Muzslay a key to the boat shop. When Hurst and Longo refused to meet with him, Muzslay filed a Tort Claims Notice alleging that Knight and Longo terminated him because of his age and because of his objections to Longo's decisions. Afterwards, Muzslay alleges, Longo prevented him from managing employee grievances and assignments, removed his traditional authority over media releases, denied him access to the computer and equipment in the boat shop, ordered him to conduct phony research assignments, and repeatedly refused to meet with him. Muzslay expressed his frustrations in several letters to Knight and Longo. Muzslay's seasonal position was terminated on September 4, 2000, and four months later he was informed his position was

---

2.      In *Ford Motor Co. v. EEOC*, the United States Supreme Court held that an employer accused of Title VII discrimination may toll the accrual of back pay liability by offering unconditional reinstatement of the employee. *Ford Motor Co.*, 458 U.S. at 232.

eliminated. The City hired Charles Bowman, a younger individual, to manage Beach Patrol and other public safety operations year-round.

B.

Muzslay filed a complaint against Mayor Knight, Longo and Ocean City, alleging that the defendants (1) unlawfully retaliated against him for engaging in activity protected by the First Amendment, NJLAD and the New Jersey Conscientious Employee Protection Act (CEPA); and (2) violated the NJLAD by discriminating against him based upon his age.[3] The District Court granted summary judgment in favor of the defendants on all but Muzslay's NJLAD age discrimination claim. Exercising its discretion under 28 U.S.C. §1367(c)(3), the District Court dismissed his NJLAD age discrimination claim for lack of subject matter jurisdiction. Each party filed a timely appeal.

II.

---

3.      Muzslay also asserted a §1985 claim, substantive and procedural due process claims, and claimed Longo and Knight were individually liable under the NJLAD. He did not raise these claims in his initial appellate brief, and we consider them waived. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005); *see* FED. R. APP. P. 28(a) (2006). We also consider his Title VII claim waived because he never raised it before the District Court. *Brennan v. Norton*, 350 F.3d 399, 418 (3d Cir. 2003).

5

A.

1. §1983 Retaliation

The First Amendment protects a public employee's right to speak as a private citizen on matters of public concern without fear of retaliation. A state cannot lawfully terminate an employee for reasons that infringe upon his freedom of speech. *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). The First Amendment protects a public employee's statement when (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) his employer did not have "an adequate justification for treating him differently from any other member of the general public" as a result of his statement. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006). A public employee's statement involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community. *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003)(internal citations omitted).

Muzslay alleges that Longo and Knight "set him up" to be terminated, and ultimately fired him, because he (1) objected to Longo's interference in the pension board matter; (2) objected to Longo's demotion of Yust; (3) requested extension of lifeguard hours; (4) objected to limitations on his authority; and (5) filed a Tort Claims Notice against Longo, Knight and the City.

6

The District Court correctly concluded that some of Muzslay's objections were not protected by the First Amendment. He was neither a formal witness, nor the aggrieved party in Yust's grievance proceeding. To the extent he advised Longo not to eliminate Yust's administrative position, he spoke pursuant to his duties as Patrol Captain, not as a private citizen. *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1960 (2006). Similarly, he advised the City to extend lifeguard hours pursuant to his official duties. *Id*. Finally, his objections to the abrogation of his authority involved only his own personal employment situation.

The District Court, however, erred with respect to two of Muzslay's claims. First, the District Court concluded that Muzslay failed to adduce any evidence that he actually protested Longo's interference in the pension board matter. Both Muzslay and Yust submitted statements, which, in combination with Longo's letter to Muzslay, *see* Appendix at 1228, support a reasonable inference that Muzslay in fact objected to Longo's orders. Other evidence may suggest Muzslay did not think that outside pressure upon the board's members was illegal, but it is the fact-finder's duty to weigh this evidence. *Phyllis Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

Second, the District Court acknowledged that Muzslay's Tort Claims Notice was protected by the First Amendment, but concluded Longo's alleged retaliatory actions were *de minimis*. However, the City's decision not to rehire Muzslay following the 2000 summer season cannot be considered *de minimis*. The record contains evidence of on-going antagonism, and the City chose to eliminate Muzslay's position within months of

7

his filing of the Tort Claims Notice. *See Brennan*, 350 F.3d at 420 (citing *Abramson v. William Paterson College*, 260 F.3d 265, 288 (3d Cir. 2001)). A reasonable jury could find Muzslay's objections to Longo's pressure upon Yust and his Tort Claims filing were substantial factors in the City's treatment of him. We will therefore reverse the District Court's judgment with respect to these claims under §1983.

## 2. NJLAD Retaliation

Next, to establish a prima facie retaliation claim under the NJLAD, Muzslay must show: (1) he engaged in protected employee activity; (2) the employer took adverse action against him after, or contemporaneous with, his activity; and (3) a causal link exists between his activity and the employer's action against him. *Abramson v. William Paterson College*, 260 F.3d 265, 286 (3d Cir. 2001). As we earlier concluded, a reasonable jury could find a causal connection between the City's decision not to re-hire him and his objections to Longo's pressure on Yust and his Tort Claims filing.

## 3. CEPA Retaliation

Muzslay also contends City officials violated the CEPA by retaliating against him because of his objections to Longo's treatment of Yust, the City's refusal to extend lifeguard hours and abrogation of his duties.[4] To establish a prima facie CEPA claim, Muzslay must show (1) he reasonably believed his employer's conduct was unlawful; (2)

---

4. Muzslay does not contend City officials violated CEPA by retaliating against him for his Tort Claims Notice filing.

8

he "blew the whistle" on the employer's conduct; (3) his employer took adverse action against him; and (4) a causal connection exists between his whistle-blowing activity and his employer's action. *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). If the defendants offer some legitimate reason for their actions, the plaintiff must then convince the fact-finder both that the defendants' proffered reason is false, and that retaliation was their real motivation. *Id.*

There is no evidence that Muzslay "blew the whistle" on the City's refusal to extend lifeguard hours. He only *recommended* they extend lifeguard hours, and he only made that recommendation according to his official duties, not as a private citizen. *See Garcetti*, 126 S.Ct. at 1960. Further, although he objected to Longo's demotion of Yust, there is no evidence he thought this decision was unlawful. Similarly, he protested removal of some of his responsibilities, but there was no "clear mandate of public policy" that prevented Longo from reassigning his duties to others. N.J. STAT. ANN. 34:19 – 3(c)(3) (2006).[5]

There is evidence, however, that would permit a reasonable jury to conclude that Muzslay "blew the whistle" on Longo's interference in the pension board matter, and that Muzslay reasonably believed Longo's actions were unlawful. The City took adverse employment action against Muzslay by deciding not to re-hire him for the 2001 season.

---

5. The District Court correctly pointed out that Muzslay's authority was subject to Longo's authority to "assign and .... modify the functions and duties of subordinates." Ordinance 90-20, Article 4, 2-1.22 (c)(3). *See* Appendix at 1112.

9

Again, given the on-going antagonism between Muzslay and Longo, a reasonable jury could find a causal connection existed between these events. Accordingly, we will reverse the District Court's judgment with respect to this latter claim under the CEPA.

## B. NJLAD Age Discrimination

Next, Muzslay alleges the defendants discriminated against him because of his age. To prevail on an age discrimination claim under either federal law or NJLAD, Muzslay must show his age "actually motivated" and "had a determinative influence on" his employer's decision to fire him. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004).

We agree with the District Court that Muzslay's age discrimination claim survives summary judgment. Mayor Knight's statement to the Sentinel that the City sought "some younger people" to take over Beach Patrol operations provided direct evidence that his employer placed substantial negative reliance on his age in deciding to fire him. This was not a vague statement, "random office banter" or "an innocuous conversational jab in a social setting." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339-40 (3d Cir. 2002). We further agree with the District Court that the City's explanation lacked consistency. The record presents sufficient facts from which a reasonable jury could disbelieve the City's explanation. We will affirm the District Court's denial of summary judgment on Muzslay's NJLAD age discrimination claim.

10

## C. Punitive Damages

To be awarded punitive damages under New Jersey law,[6] Muzslay must establish that (1) upper-management actively participated in, or was willfully indifferent to, discrimination against him, and (2) the offending conduct was "intentional, malicious, and evil-minded." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 124 (3d Cir. 1999) (internal citations omitted). We agree with the District Court that Muzslay failed to proffer evidence that City officials engaged in "evil-minded" conduct.

## D. Attorneys' Fees

Finally, we reject Muzslay's claim for $26,962.50 in attorney's fees incurred when he successfully opposed the appellees' request for permission to file an over-length brief. It was Muzslay's own failure to comply with the Federal Rules of Appellate Procedure that prompted the appellees to seek permission to file an over-length brief. In his initial brief, Muzslay failed to include a proper statement of the facts, FED. R. APP. P. 28(a) (2006), and improperly added an extensive statement of the facts in his reply. *See* FED. R. APP. P. 28(c) (2006).

## III.

In summary, we will affirm the District Court's denial of summary judgment regarding Muzslay's NJLAD age discrimination claim. However, we will reverse the District Court's judgment regarding Muzslay's claims under §1983, the NJLAD and

---

6.     Muzslay does not claim he is entitled to seek punitive damages under §1983.

11

CEPA, vacate the District Court's dismissal of his NJLAD age-discrimination claim, and remand the cause for further proceedings.