NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1953
_____

TAMARA WHITE,
Appellant

v.

JAMES CLEARY, individually and as an employee
of Monmouth Regional High School District;
ANTHONY D'ORIO, individually and as an employee of
Monmouth Regional High School District;
MONMOUTH REGIONAL HIGH SCHOOL DISTRICT; and
ANDREW TEEPLE, individually and as an employee
of Monmouth Regional High School District
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court  No. 3-09-cv-04324
District Judge: The Honorable Peter G. Sheridan

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 14, 2013

Before: SMITH, CHAGARES, and BARRY, Circuit Judges

(Filed: February 6, 2013)

_____

OPINION
_____

SMITH, *Circuit Judge.*

Tamara White appeals the District Court's grant of summary judgment on her discrimination and retaliation claims. Because no reasonable jury could find for White, we will affirm.

I

White taught social studies for nearly two decades at Monmouth Regional High School in New Jersey. She became the Falcons' varsity cheerleading coach in 1995. Although the school's athletic director viewed the untenured position as "a babysitter's job,"[1] White wanted to build a competitive cheerleading program. Over the years, these opposing visions led to recurring clashes between White and the cheerleaders, their parents, and the administrators.

In 2005, the athletic director wrote a letter informing White that he would not recommend her for the coaching job in the upcoming school year. The letter listed a number of grievances—for example, White had missed an annual coaches meeting, she did not travel with the team to away games, and she prevented the cheerleaders from participating in outside activities. After receiving this letter, White agreed to resign in exchange for a positive job reference.

White was not content to remain on the sidelines. Over the next three

---

[1] *See* App. II at 82.

years—in 2006, 2007, and 2008—she reapplied for the varsity coaching job. Each year, the school selected a different candidate. After her interview in 2007, the school's principal, Andrew Teeple, told White that she would get the job, but he soon withdrew the promise in an email. In the same year, White applied to be the school's affirmative-action officer. The school instead hired an untenured teacher.

White began making complaints outside the school. In the summer of 2008, White spoke at a Board of Education meeting. According to White, she complained that the cheerleading coaches received unequal pay and that the cheerleading squad received unequal funding. But according to other accounts, she merely complained about her own employment plight. In any event, she also filed a complaint with the Equal Employment Opportunity Commission.

Finally, in 2009, White turned to the federal district court. She sued Monmouth Regional High School District, Teeple, James Cleary (the superintendent), and Anthony DeOrio (the current athletic director) in the United States District Court for the District of New Jersey. She alleged four claims: (1) hostile work environment under Title VII and the New Jersey Law Against Discrimination; (2) retaliation under the First Amendment; (3) unequal pay under 29 U.S.C. § 206; and (4) retaliation under Title VII and the New Jersey Law Against Discrimination.

After filing her complaint, White applied for the junior-varsity coaching position. As before, the school selected another candidate. White maintained her suit, and at the close of discovery, the District Court granted the defendants' motion for summary judgment. White filed a timely notice of appeal.[2]

## II

We exercise plenary review over the District Court's decision to grant summary judgment. *Orvosh v. Program of Grp. Ins. for Salaried Emps. of Volkswagen of Am.*, 222 F.3d 123, 129 (3d Cir. 2000). We will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" exists if a reasonable jury could find for the nonmoving party. *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

## III

White's central argument is that material factual disputes are unresolved. These supposed disputes include the subject of her Board testimony, the reason she was not hired as the affirmative-action officer or the varsity coach in 2007, and the reason she was not hired as the assistant coach in 2009. In her view, the disputes should have prevented summary judgment.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

We begin by reminding the parties that district courts generally do not make "factual findings" at the summary-judgment stage. *See* Appellant's Br. at 7–9, 13 (referring to the District Court's "factual findings"); Appellee's Br. at 14–15 (same). Instead, they determine whether a reasonable jury could find for the nonmoving party. *Fakete*, 308 F.3d at 337. Semantic clarity is an important preventative of doctrinal malaise.

Linguistic matters aside, there are other problems with White's appeal. Most grievously, her brief makes little effort to connect these supposed factual disputes to her claims. *See* Appellant's Br. at 8–14. In fact, aside from her First Amendment claim, we are uncertain which claims she wants us to reconsider on appeal. Much of White's brief comes perilously close to violating the principle that, "absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations." *Simmons v. City of Phila.*, 947 F.2d 1042, 1065 (3d Cir. 1991).

At any rate, the supposed factual disputes are at most relevant to her hostile-work-environment claim and to her two retaliation claims. Because they are not relevant to her Equal Pay Act claim, we do not reconsider that claim on appeal. As for the remaining three claims, we will affirm the District Court's judgment.

A

White claims that the defendants created a hostile work environment in

violation of 42 U.S.C. § 2000e–2(a). Such claims have five elements:

> (1) the employee suffered intentional discrimination because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)). The District Court concluded that White could not show intentional discrimination. We agree.

White argues that a reasonable jury could find intent based on two events. First, the school hired an untenured teacher instead of White as the school's affirmative-action officer. In our view, this alone is not indicative of intent. Tenure status was not a stated job qualification, and the other teacher was well liked. Second, Teeple told White that she would receive the coaching job in 2007, but he later revoked that promise. This similarly fails to show intent. A person may change his mind for perfectly acceptable reasons.

We conclude that White's hostile-work-environment claim fails. As a result, White's claim under the New Jersey Law Against Discrimination must also fail. *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim.").

6

B

Next, White claims that the school retaliated against her for engaging in protected activities. *See* 42 U.S.C. § 2000e–3. To establish a prima facie claim for retaliation under Title VII, the plaintiff must prove three elements:

> (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.

*Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001). The District Court concluded that White could not satisfy the third element. Again, we agree.

White spoke at a Board of Education meeting about gender inequality in 2008. She soon filed a complaint with the Equal Employment Opportunity Commission and eventually filed a lawsuit in 2009. In White's view, the school retaliated by not hiring her as the affirmative-action officer in 2007 and by not hiring her as the junior-varsity coach in 2009. The first problem with this argument is that White was denied the job as affirmative-action officer before she participated in the three protected activities. White argues on appeal that she was denied the job in 2008—after she spoke at the Board meeting—but White clearly stated in her deposition that she applied for the job and was denied in 2007. *See* App. II at 180; *see also* Supp. App. at 78.

7

White also points to the rejection of her 2009 application for the assistant-coach position. Before she spoke at the Board meeting, however, the school had repeatedly rejected her previous coaching applications. We see no reason to conclude that the final rejection was somehow the result of retaliation. This claim thus fails, along with her claim under the New Jersey Law Against Discrimination. *See Schurr*, 196 F.3d at 498.

## C

Finally, White claims that the defendants violated the First Amendment by retaliating against her. *See* 42 U.S.C. § 1983. For the reasons listed above, White cannot show that her speech was "a substantial or motivating factor in the retaliatory action." *Reilly v. Atlantic City*, 532 F.3d 216, 224 (3d Cir. 2008) (citations and quotation marks omitted). Nor can she satisfy the balancing test in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

\* \* \*

For these reasons we will affirm the District Court's judgment.