

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2004

# Monaco v. Amer Gen Assurance

Precedential or Non-Precedential: Precedential

Docket No. 02-4190

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Monaco v. Amer Gen Assurance" (2004). *2004 Decisions.* Paper 944.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/944

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

No. 02-4190

ROBERT R. MONACO,

Appellant

v.

AMERICAN GENERAL ASSURANCE
COMPANY, an Illinois corporation;
AMERICAN GENERAL
CORPORATION, a
Texas corporation; WILLIAM LEARY;
JOHN DOE; RICHARD ROE

_____

On Appeal from the United States
District Court
for the District of New Jersey
(D.C. Civ. No. 01-03642)
Honorable Mary Little Cooper,
District Judge

Argued January 13, 2004

BEFORE: MCKEE, SMITH, and
GREENBERG, Circuit Judges

(Filed: February 23, 2004)

Robert H. Jaffe (argued)

Mark B. Watson
Robert H. Jaffe & Associates
8 Mountain Avenue
Springfield, N.J. 07081

Attorneys for Appellant

Thomas J. Barton (argued)
Patricia Proctor
Kimberly M. Coffina
Drinker, Biddle & Reath
105 College Road East
P.O. Box 627, Suite 300
Princeton, N.J. 08542

Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. FACTUAL AND PROCEDURAL
HISTORY

This matter comes on before this
court on Robert Monaco's appeal from
an order entered by the district court on
October 25, 2002, granting appellees'
motion for summary judgment. Monaco
brought this action against his former
employer, its corporate parent, and
certain of his former co-employees,
alleging that they discriminated against
him on the basis of his age when his
employer laid him off as part of a
company-wide reduction in force on June
30, 1999. In addition, he asserted breach
of contract claims against the corporate
defendants.

Monaco was born on March 9, 1946. On June 2, 1975, he began working for United States Life Insurance Company ("United States Life") as a sales representative for the New Jersey area selling term life and medical insurance. United States Life promoted him in 1979 to regional group manager in which position he was responsible for opening the New Jersey regional office in Chatham and oversaw the sales representatives and clerical staff in that office. In 1988 United States Life promoted him again, this time to regional vice president in charge of the Eastern Region, a position in which he coordinated insurance sales in several states along the eastern seaboard. During his tenure as regional vice president his employer expanded his territory to include several additional states.

In 1997, American General Assurance Company ("AGAC") purchased United States Life. After the AGAC acquisition, Monaco remained the vice president in charge of the Eastern Region. Prior to April 1999, J. Hugh Bailey ("Bailey"), senior vice president of sales and marketing, then age 62, was Monaco's immediate supervisor, but in May 1999, William Leary ("Leary"), age 50, replaced Bailey, who was retiring, in that capacity. In late 1998, AGAC determined that its medical insurance line of business was incurring large losses, a circumstance which led it to decide to exit this product line. Notwithstanding its unprofitably, inasmuch as sales of medical insurance

constituted a significant portion of the sales volume in the Eastern Region, AGAC determined to cut expenses by consolidating its operations and reducing its workforce.

When AGAC laid off Monaco on June 30, 1999, he was age 53. At that time AGAC had two regional vice presidents, Monaco, who was vice president of the Eastern Region, and Robert Shaw ("Shaw") age 55, who was vice president of the Western Region. Shaw and Monaco had identical responsibilities in the two different regions. In June 1999, AGAC had eight sales vice presidents/branch managers who reported directly to Monaco: (1) Edward McDonald in Danbury, Connecticut, approximately age 45; (2) Walter Schroeder for the New England Region, approximately age 47; (3) Ted Makuch in New York, in his mid-40s; (4) Richard Gawlak in the Philadelphia area, approximately age 50; (5) Joseph Ficorilli in the Cincinnati area, approximately age 62; (6) Paul Bouchard in the Florida area, in his early 40s; (7) Dale Brockman in New Jersey, approximately age 50; and (8) Michael Lombardi in charge of double override agencies, approximately age 64.

On June 14, 1999, when Leary informed Monaco that AGAC was laying him off effective June 30, 1999, he explained that it was doing so because it was eliminating his position of vice president for the Eastern Region as it was consolidating its Eastern and Western

2

Regions under Shaw's control. At the time of Monaco's layoff, AGAC also laid off several other employees as part of a company-wide reduction in force. Following Monaco's layoff, Shaw assumed the day-to-day management of the Eastern Regional sales office but Leary also provided oversight of the Eastern Region.

In April 2000, AGAC hired Tom McKellar, who was born on April 26, 1948, and is approximately two years younger than Monaco, as national vice president of sales. McKellar worked out of the New Jersey office and was responsible for national sales and other senior management duties in addition to overseeing the Eastern Regional sales offices.

On June 11, 2001, Monaco brought this action in the Superior Court of New Jersey against his former employer, AGAC, and its parent corporation, American General Corporation, as well as his supervisor, Leary, and two unnamed AGAC employees, John Doe and Richard Roe, charging all defendants with age discrimination, directly or as aiders and abettors, under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. (West 2002) ("NJLAD").[1]

In addition, he asserted claims against the corporate defendants for breach of contract. Defendants removed the case to the district court on the basis of diversity of citizenship and subsequently moved for summary judgment. On October 25, 2002, the district court granted the defendants' motion, concluding with respect to his age discrimination claim that while Monaco could satisfy the first three elements of the McDonnell Douglas (McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973)) prima facie case test, he could not satisfy the fourth element. It also granted summary judgment to the corporate defendants on Monaco's breach of contract claim. Monaco then brought this appeal.

## II. JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332 inasmuch as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.[2]

---

[1]Inasmuch as Monaco never sought to replace the John Doe and Richard Roe defendants with the names of actual AGAC employees we will not address any claims made against them. See Garvin v. City of Philadelphia, 354 F.3d 215 (3d Cir. 2003).

[2]When we reviewed this case we questioned whether the parties were of diverse citizenship and thus we directed them to make submissions on this point. We now are satisfied that the parties are of diverse citizenship and there is diversity of

We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

### A. STANDARD OF REVIEW

We exercise plenary review of the district court's order granting summary judgment to defendants. See Fakete v. AETNA, Inc., 308 F.3d 335, 337 (3d Cir. 2002) (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 566 n.3 (3d Cir. 2002)).

### B. THE REQUIREMENTS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION COMPARED TO THOSE OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

Monaco asserts that the requirements to set forth a prima facie case under the NJLAD are less stringent than those required in similar cases under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), a statute not involved directly in this case brought solely under New Jersey law. In particular, he contends that he does not have to make a showing that AGAC retained a sufficiently younger employee

for him to establish a prima facie case, though an action under the ADEA would have required that he make such a showing. Appellees contend, however, that Monaco has waived this argument because in his brief in opposition to their motion for summary judgment he stated that to determine if the fourth element of the prima facie case step of the McDonnell Douglas burden shifting framework had been satisfied the court should look to "whether the plaintiff is discharged while the defendant retained similarly situated sufficiently younger persons in comparable job positions," J.A. at 293-94, seemingly relying on a McDonald Douglas formulation of that element. Appellees' br. at 11 n.3. But it does not matter whether Monaco waived his argument that he has a lesser burden under the NJLAD than he would have had under the ADEA with respect to the fourth element of the McDonnell Douglas test as we conclude that the two statutes contain similar requirements for proving the fourth element of a plaintiff's prima facie case.[3] Thus, his argument is to no avail.

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

---

citizenship jurisdiction in this case.

---

[3]We doubt that he in fact made such a waiver.

4

such individual's age." 29 U.S.C. § 623(a)(1). The protection against age discrimination in the ADEA is "limited to individuals who are at least 40 years of age." Id. § 631(a). When, as here, a plaintiff alleges that he has suffered age discrimination predicated on disparate treatment, liability under the ADEA depends on whether age "actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706 (1993); see also Raytheon Co. v. Hernandez, 124 S.Ct. 513, 519 (2003).[4] The NJLAD, though worded differently, similarly makes age discrimination unlawful but does not limit its protections to persons at least 40 years of age. In cases brought under either the ADEA or the NJLAD, the plaintiff's age actually must have played a role in the employer's decisionmaking process and had a determinative influence on the outcome of that process. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 2105 (2000); Bergen Commercial Bank v. Sisler, 723 A.2d 944, 953 (N.J. 1999).

Under both the ADEA and the NJLAD, a plaintiff may meet his or her burden by (1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in Price Waterhouse v. Hopkins, 490 U.S. 228, 261, 109 S.Ct.

1775, 1796 (1989),[5] or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in McDonnell Douglas. Fakete, 308 F.3d at 337-38; Sisler, 723 A.2d at 954. Inasmuch as Monaco attempted to prove his case solely through the use of indirect evidence, our analysis will focus on the burden shifting framework of McDonnell Douglas as applied under the NJLAD.

The Supreme Court of New Jersey has explained the three-step burden shifting analysis "as a starting point" for analysis of claims under the NJLAD. Sisler, 723 A.2d at 955. Under this analysis a plaintiff first must establish a prima facie case, the step at which Monaco lost his case in the district court. If the plaintiff does so the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. Mogull v. CB Commercial Real Estate Group, Inc., 744 A.2d 1186, 1197-98 (N.J. 2000). Then, if the defendant meets this rather light burden, the plaintiff must discredit the defendant's preferred reason for its action or adduce evidence that discrimination was more likely than not a

---

[4]Monaco does not attempt to advance a disparate impact argument.

[5]We have regarded Justice O'Connor's opinion as controlling, see Fakete, 308 F.3d at 337 n.2, but we note that in Desert Palace, Inc. v. Costa, 123 S.Ct. 2148, 2153 (2003), the Court declined an opportunity to indicate which opinion in Price Waterhouse was controlling.

5

motivating or determinative cause of the adverse employment action. See Potence v. Hazleton Area Sch. Dist., No. 03-1535, __ F.3d __, 2004 WL 188083, at *2 (3d Cir. Feb. 2, 2004) (ADEA case).

In an ordinary employment termination case under the ADEA to establish a prima facie case of age discrimination at the first step of the McDonnell Douglas burden shifting framework a plaintiff must show that he or she: (1) was a member of the protected class, i.e., was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001). In the context of a reduction in force, in order to satisfy the fourth element of a prima facie case under the ADEA, a plaintiff must show that the employer retained a sufficiently younger similarly situated employee. Anderson v. Consol. Rail Corp., 297 F.3d 242, 249-50 (3d Cir. 2002).

As we have indicated, however, Monaco maintains that the NJLAD does not require him to show that AGAC retained a sufficiently younger employee in order for him to make out a prima facie case of age discrimination in a reduction-in-force case and thus it differs from the ADEA. His failure to make this showing led the district court to grant the appellees' motion for a summary judgment. In support of this argument

Monaco cites Sisler, 723 A.2d at 956, Petrusky v. Maxfli Dunlop Sports Corp., 775 A.2d 723 (N.J. Super. Ct. App. Div. 2001), and Reynolds v. Palnut Co., 748 A.2d 1216 (N.J. Super. Ct. App. Div. 2000).

The NJLAD provides, in pertinent part, that "[a]ll persons shall have the opportunity to obtain employment . . . without discrimination because of . . . age . . . . This opportunity is recognized as and declared to be a civil right." N.J. Stat. Ann. § 10:5-4 (West 2002). It further states, in relevant part that:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. For an employer, because of the . . . age . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

Id. § 10:5-12.

In general, to establish a prima

facie case under the NJLAD for unlawful termination, and thus satisfy the first step of the burden shifting analysis, a plaintiff must demonstrate that he or she: (1) belongs to a protected class, (2) was qualified for the position held, (3) was terminated despite adequate qualifications, and (4) after termination the position remained open and the employer continued to seek applications. See Sisler, 723 A.2d at 955 (citations omitted). Of course, the NJLAD makes it unlawful for an employer to terminate an employee for numerous reasons in addition to age and thus is much more than an age discrimination statute.

In Sisler, a bank vice president brought a claim of age discrimination under the NJLAD, alleging that his employer wrongfully discharged him because of his youth, an unusual action that conceptually was possible because, as we have indicated, in contrast to the ADEA, the NJLAD does not limit the individuals protected from age discrimination to persons over the age of 40. Id. at 950. In Sisler the Supreme Court of New Jersey stated that under the NJLAD in an age discrimination case, the fourth element of the McDonnell Douglas prima facie case analysis:

> properly focuses not on whether the replacement is a member of the protected class but on 'whether the plaintiff has established a logical reason to believe that the decision rests on a

legally forbidden ground.' Thus, under the [NJ]LAD, which specifies no qualifying age, courts have modified the fourth element to require a showing that the plaintiff was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination.'

Id. at 956 (citations omitted) (emphasis added). Obviously the reference to a younger replacement could not have been intended to apply when an employee is discharged on account of his or her youth because in that situation his or her burden to establish a prima facie case quite logically is to show that the replacement employee was "sufficiently older to permit an inference of age discrimination." Id. at 959. It is apparent that the court in Sisler refined the fourth element of the requirements for a prima facie case in age discrimination situations that it had set forth for application in NJLAD cases in general.

We recognize, however, that the court's focus in Sisler was not on the fourth element of the McDonnell Douglas framework, but on the first element, i.e., how to modify the requirement that an individual belong to a protected class when the claimant brings a charge of age discrimination on the basis of youth. Id. at 956-57. The

7

<u>Sisler</u> court held that in order to satisfy the first element, claimants such as Sisler must show background circumstances supporting the suspicion that the defendant is "the unusual employer who discriminates against the majority." <u>Id.</u> at 957.[6] Nevertheless we are not at liberty to ignore <u>Sisler</u>'s language recognizing the necessity of a sufficient age differential between the terminated and replacement employees for the plaintiff to establish a prima facie case of age discrimination demonstrating the presence of its fourth element.

In <u>Petrusky</u>, 775 A.2d at 725-26, and <u>Reynolds</u>, 748 A.2d at 1219-20, on which Monaco relies, the Appellate Division of the Superior Court of New Jersey, the intermediate state court of appeals, addressed the application of <u>Sisler</u> to cases involving allegations of traditional age discrimination brought by older employees. In both cases the Appellate Division declined to adopt the formulation of the fourth element of the prima facie case in the language we have quoted from <u>Sisler</u> regarding age discrimination cases, holding instead that

the Supreme Court of New Jersey's analysis in that case was limited to cases involving allegations of reverse discrimination. <u>Petrusky</u>, 775 A.2d at 725; <u>Reynolds</u>, 748 A.2d at 1219. The court in <u>Reynolds</u> held that in cases involving a "traditional age discrimination claim" a plaintiff:

> need not show that he was <u>replaced</u> by someone <u>sufficiently younger</u>. Rather, plaintiff must show that he was a member of a protected class, that he was performing the job at a satisfactory level; that he was discharged, and that the employer sought others to perform the work after the complainant had been removed.

<u>Id</u>. The court in <u>Petrusky</u> adopted the <u>Reynolds</u> court's interpretation of <u>Sisler</u>. <u>See</u> <u>Petrusky</u>, 775 A.2d at 725 ("We adhere to that view and regard it as governing until the Supreme Court declares otherwise.").

Two cases in the district court have espoused divergent views on whether to follow the interpretation of <u>Sisler</u> that <u>Reynolds</u> and <u>Petrusky</u> set forth. In <u>Wright v. L-3 Communications Corp.</u>, 227 F. Supp. 2d 293, 294-95 (D.N.J. 2002), the court held that in order to satisfy the fourth element of a prima facie case of age discrimination under the NJLAD, a plaintiff "must only show

---

[6]Notwithstanding opinions so suggesting it may not be so unusual for employers to discriminate against the majority because an employer might do exactly that to satisfy demands for diversity in its work force, to promote affirmative action, or because the employer for other reasons prefers to hire an individual who is not in the majority.

that his employer sought others to perform the same work after he was terminated from his position." On the other hand, earlier, in Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 625 (D.N.J. 2001), the court held that under the NJLAD, "in order to satisfy the fourth prong of the McDonnell Douglas prima facie case, plaintiff must show that he was replaced by someone sufficiently younger to create an inference of unlawful age discrimination." We are impressed with the comprehensive analysis in Swider which points out that the Appellate Division itself has not interpreted Sisler consistently. In this regard, Swider cites Williams v. Pemberton Township Pub. Schs., 733 A.2d 571, 577 (N.J. Super. Ct. App. Div. 1999), in which the court quoted Sisler for the point that under the NJLAD the fourth element of a prima facie case requires a showing that the plaintiff was replaced with "a candidate sufficiently younger to permit an inference of age discrimination."

Of course, in light of the circumstance that we are applying state law we recognize that we are bound by the opinions of the state's highest court, Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996), though "[i]n the absence of guidance from [it], we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." Werwinski v. Ford Motor Co., 286 F.3d 661, 670 (3d Cir. 2002) (quoting Gares, 90 F.3d at

725). Thus, we have given careful consideration to Petrusky and Reynolds. Nevertheless, after analyzing these Appellate Division cases, we conclude that the district court in Swider was correct and agree with it "that the Reynolds court misconstrued the standard in Sisler." Swider, 134 F. Supp. 2d at 623.[7] To us it is clear from Sisler that when the Supreme Court of New Jersey set out the fourth element of the McDonnell Douglas prima facie case framework in an age discrimination case it regarded that standard as applicable in both traditional and reverse age discrimination cases, the difference being that in a traditional case the replacement employee must be sufficiently younger than the replaced employee and in a Sisler reverse discrimination situation the replacement employee must be sufficiently older than the replaced employee.

When the Sisler court explained the fourth element it was following the analysis of prior cases as to what was required to establish a prima facie case in an age discrimination context. As set forth above, the Supreme Court of New Jersey in Sisler specifically stated that, "under the [NJ]LAD, which specifies no qualifying age, courts have modified the fourth element to require a showing that the plaintiff was replaced with 'a candidate sufficiently younger to permit

---

[7]The district court decided Swider before the Appellate Division decided Petrusky.

an inference of age discrimination.'" 723 A.2d at 956 (citation omitted) (emphasis added).[8] Nothing in Sisler suggests that the principles underlying this modest modification are applicable only in cases involving reverse age discrimination and we see no reason to limit the holding of the Supreme Court of New Jersey to those cases as it would not be logical to do so. See Swider, 134 F. Supp. 2d at 624 (stating that under Sisler "[t]he fourth prong remains unchanged in age discrimination cases, whether they be traditional or reverse"). Indeed, the modification, as literally stated, could not be applicable in a case in which the employer is terminating the employee by reason of youth as in such a case it would be inconsistent with the discriminatory act for an employer to hire an even younger replacement. Thus, we are at a loss to understand how the Appellate Division limited Sisler's articulation of the fourth element of a prima facie case to cases involving reverse age discrimination.

In declining to follow Reynolds and Petrusky we point out that they lead to an absurd result. If a plaintiff only need show, as these cases indicate, to make out a prima facie case of age discrimination that he or she was a member of the protected class, performed satisfactorily, but was discharged following which the employer sought a replacement employee then, in view of the circumstance that the NJLAD does not include a 40-year old age threshold, practically every terminated employee would be able to establish a prima facie case of age discrimination.[9] Thus, Reynolds and Petrusky require that a court find that a plaintiff has established a prima facie case of age discrimination even though none of the four elements of his or her prima facie case in any way relates to the plaintiff's age.

Such a result would fly in the face of the requirement set forth in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311-12, 116 S.Ct. 1307, 1310 (1996) (citation omitted), that "there must be a least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.'" Moreover, the result would be at odds with the recognition in Sisler that a prima facie case analysis focuses "on whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground." Sisler, 723 A.2d at 956 (internal quotation marks and citation omitted). Furthermore, the presumed age discrimination would be

---

[8]In fact, as we have indicated, in cases involving allegations of reverse age discrimination under the NJLAD, a plaintiff would be required to show that the individual who replaced him or her was sufficiently older in order to infer discrimination on the basis of youth.

[9]There are some limited exceptions. See Sisler, 723 A.2d at 952.

10

generic because the plaintiff under <u>Sisler</u> could be either too young or too old.[10]

Overall we are satisfied that we should apply the same standard for the fourth element of Monaco's prima facie case under the NJLAD as we would have applied under the ADEA if he had brought his case under that statute. Thus, we look to the ages of the remaining similarly situated employees to compare them to Monaco to see if he has established the existence of that element. <u>See</u> <u>Anderson</u>, 297 F.3d at 249-50; <u>Sisler</u>, 723 A.2d at 956.[11] We are

---

[10]Under <u>Reynolds</u> and <u>Petrusky</u> a 35-year old terminated individual usually could demonstrate a prima facie case of age discrimination under the NJLAD even though he or she is so young that the ADEA would be inapplicable in the case but so old that it would be bizarre to believe that the employer discriminated against the individual by reason of youth.

[11]It is conceivable that in an employment discrimination case under the ADEA or other applicable law in which there was compelling direct evidence of discrimination by reason of age, race, or some other interdicted factor that the mere fact that a replacement worker is in the same protected class as the terminated employee would not mean that the employer could not be liable under the statute involved. <u>See</u> <u>Williams</u>, 733 A.2d at 578. After all, the employer after discharging the employee might find that the only suitable replacement employee

convinced that <u>Sisler</u> compels this result. Of course, as we explain below, we apply this element in a way to make it relevant in this reduction-in-force situation.

## C. "SIMILARLY SITUATED"

Frequently courts apply the <u>McDonnell Douglas</u> burden shifting analysis when an employer replaces an employee. But here we deal with that analysis in the different context of a reduction in force. In <u>Anderson</u>, 297 F.3d at 250, we explained that in the first step of the burden shifting analysis in a reduction-in-force case brought under the ADEA, "the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." We reasoned that unless the fourth element required the individual retained to be similarly situated to the one who was terminated we would be construing the ADEA as a bumping statute guaranteeing employment to a protected worker at the expense of a sufficiently younger employee. <u>Id.</u>

In the absence of divergent language between the NJLAD and federal discrimination laws, the Supreme Court of New Jersey has applied federal standards in NJLAD cases "in the

---

was in the same protected class and thus hire that replacement employee. In that event it would be difficult to conclude that the employer should not be liable for the wrongful discharge.

11

interest of achieving a degree of uniformity in the discrimination laws." Sisler, 723 A.2d at 950; see Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 65 (3d Cir. 1996) ("[a]ge discrimination claims under the ADEA and [NJ]LAD are governed by the same standards and allocation of burdens of proof") (citations omitted). Inasmuch as there is no applicable divergent statutory language in this case, and taking into consideration the references in Sisler to the age of replacement employees, we believe that if faced with a case of age discrimination in the context of a reduction in force, the Supreme Court of New Jersey would adopt the similarly situated requirement of Anderson.

In Anderson, 297 F.3d at 250, we held that non-union employees were not similarly situated to "entry-level positions or other low-level positions without providing any evidence of [routine job] shuffling." We affirmed the decision of the district court granting summary judgment to the defendants as to certain plaintiffs "because the employees retained were either not sufficiently younger or the evidence failed to show that the duties were comparable or that they were otherwise similarly situated." Id.

In this case we are required to articulate further who is "similarly situated" for purposes of making out the fourth element of a prima facie case in a reduction-in-force situation under the NJLAD.[12] In accord with Anderson, we will not compare an individual such as Monaco, a vice president in charge of the Eastern Region, with lower-level employees without evidence of routine job shuffling which does not exist. See id. However, an individual does not need to be situated identically to satisfy the fourth element of a plaintiff's prima facie case under the NJLAD. In order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace. This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner. See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999).

Thus, we must determine which employees at AGAC were similarly situated to Monaco. AGAC maintains that Shaw, the vice president for the Western Region, who was two years older than Monaco, was the only individual it employed similarly situated to Monaco. Of course, there is no doubt but that Monaco and Shaw were similarly situated as they had the same job responsibilities, though for different regions, and Monaco does not contend

---

[12]We do not suggest that the standard would be different under the ADEA. Rather, we merely recognize that this case insofar as it claims age discrimination is solely under the NJLAD.

12

otherwise. He does counter AGAC's argument, however, by contending that we should read the similarly situated requirement more broadly and also consider the eight sales vice presidents/branch managers whom he directly supervised to be similarly situated. The district court rejected Monaco's argument, finding that there was no evidence to suggest that sales vice presidents/branch managers were similarly situated. We agree with the district court.

Under Federal Rule of Civil Procedure 56(e), when a party has filed a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Monaco states in his brief that he "should have been given an equal employment opportunity to fill a branch manager or district sales position in which he had previously been employed." Appellant's br. at 20. However, in this litigation he has not produced any evidence to show that his position of vice president of the Eastern Region was similarly situated to that of the eight vice presidents/branch managers whom he directly supervised.[13]

Monaco does maintain that he had the qualifications to serve in one of these positions, and clearly he was so qualified as he had held such a position prior to being promoted to vice president of the Eastern Region in 1988. But, as the district court in Anderson explained, "[m]erely because a plaintiff has met the standards for a particular position . . . does not mean that the plaintiff and the person who occupied that position were similarly situated for purposes of a prima facie age discrimination claim." Anderson v. Consol. Rail Corp., No. Civ. A. 98-6043, 2000 WL 1201534, at *5 (E.D. Pa. Aug. 9, 2000).

Monaco contends that if we adopt a narrow reading of the similarly situated requirement we will be inviting "mischief" by employers. Appellant's

_____

brokers. However, Monaco had supervisory responsibility over all of the offices in the eastern United States while each of the eight vice president/branch managers was responsible for his individual office. If we were to focus on the job responsibilities of Monaco's position at the level of abstraction which he suggests is appropriate, his position would be similarly situated to many entry-level employees who solicited insurance. As we explained in Anderson, 297 F.3d at 250, this approach, if applied under the ADEA, would cause that statute, and, if applied under the NJLAD, would cause it as well, to require the "bumping" of lower-level sufficiently younger employees in order to retain protected workers.

_____

[13]At oral argument, Monaco argued that the focus of his position as well as the eight vice president/branch managers was to solicit insurance through independent

13

br. at 17. He argues that employers will manipulate reductions in force by first placing older workers into "dead-end" positions for a few months where there are no similarly situated individuals and then later terminating or laying off the older employees, thereby, according to Monaco's reasoning, avoiding liability for age discrimination.

We disagree. First, Monaco's case fails to present such a factual scenario. AGAC laid off Monaco after he had been employed as vice president of sales for the Eastern Region for many years and certainly it did not "shuffle" him into a dead-end position prior to the reduction in force. Second, as explained above, a determination of whether an individual can satisfy the "similarly situated" requirement triggers a fact-intensive inquiry based on a whole constellation of factors facing that individual employee. Certainly if there was evidence that an employer transferred an older worker from his position to a new one which happens to have few similarly situated individuals soon before his termination, a court would be able to consider that circumstance in determining whether the employee established the fourth element of his or her prima facie case of age discrimination. See Marzano v. Computer Science Corp., 91 F.3d 497, 511 (3d Cir. 1996). But we reiterate that here there was no such transfer.

In view of the circumstance that Shaw was the only employee at AGAC similarly situated to him, Monaco's case

under the NJLAD cannot be successful. In O'Connor, 517 U.S. at 312-13, 116 S.Ct. at 1310, the Supreme Court explained that under the ADEA an individual cannot make out a prima facie case such that a court will infer unlawful age discrimination if the employee is replaced with another worker who is "insignificantly younger." We subsequently have explained that in order to satisfy the sufficiently younger standard, "there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot." Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (internal citation marks and citation omitted).

In fact Shaw, the vice president of the Western Region, is two years older than Monaco. Therefore, in the light of O'Connor, Showalter, and Sisler, Shaw's retention in this reduction-in-force situation cannot help Monaco establish the fourth element of his prima facie case. Indeed, the exact opposite is true. Furthermore, even if we make the unfounded assumption that Monaco was similarly situated to his supervisor Leary and to McKellar, the national vice president of sales who was hired ten months after Monaco's layoff, this assumption would not help him set forth a prima facie case.[14] Leary and McKellar

---

[14]Significantly Monaco does not even ask us to make this assumption for in his brief, though he points out that Leary took

14

respectively were only three and two years younger than Monaco, a differential which does not satisfy the sufficiently younger standard O'Connor and Showalter set forth. Moreover, as Monaco acknowledged at his deposition, their levels within the company differed from his. Inasmuch as we agree with the district court that Monaco has failed to establish the fourth element of his prima facie case, we will affirm its grant of

over a portion of Monaco's supervisory functions for the Eastern Region, he indicates "the comparison sought is between the plaintiff who held an executive sales vice president position with other employees who held executive sales vice president/branch manager positions, the very same job position the plaintiff previously held before he had been promoted to Vice President of the Eastern Region." Appellant's br. at 16. In his reply brief he adheres to this approach as he recites that he "should have been given the opportunity to compare his skills and work experience to employees holding executive sales position/branch manager at a level he had previously performed prior to being promoted to Regional Vice President." Appellant's reply br. at 2. Monaco's contention in his briefs, to the extent that he does not claim that Leary and McKellar were similarly situated with him, is consistent with his deposition testimony which was that, besides himself, Shaw was the only person "on the same level . . . within the company." J.A. at 125.

summary judgment as to Monaco's claim under the NJLAD.[15]

### D. CONTRACT CLAIM

The AGAC employee handbook provides, in relevant part, that the company complies with "all applicable laws regarding equal employment opportunities without regard to . . . age . . . ." J.A. at 206. It further states that "[n]othing in this manual or in the company's policies, practices, or procedures should be read as a guarantee

[15]In his complaint, Monaco asserted individual claims against Leary and the John Doe and Richard Roe defendants under N.J. Stat. Ann. § 10:5-12(e) (West 2002). He claimed that the individual defendants did "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." Id.; see J.A. at 54. In granting summary judgment in this case to all defendants the district court did not discuss this claim. However, inasmuch as we hold that the district court correctly granted summary judgment to the corporate defendants, any claim he brought against the individual defendants for aiding and abetting fails as well.

Our disposition makes it unnecessary for us to consider appellees' contention that they asserted a legitimate non-discriminatory basis for Monaco's termination which Monaco did not rebut and that for this independent reason are entitled to summary judgment.

of employment, a commitment to provide employment, or a promise to continue any terms or conditions of existing employment." J.A. at 206. The handbook also makes clear that "[e]xcept where mandated by law, these policies and programs may be changed or discontinued at any time at the discretion of the company." Id.

Monaco maintains that the provision stating that AGAC complies with all applicable equal opportunity laws without regard to age created a binding contractual obligation between him and AGAC which it breached when it terminated him allegedly on the basis of age. The district court rejected this argument as it held that the language contained in the handbook "was no more than the language necessary to meet the statutory requirements of the NJLAD." J.A. at 8.

Under New Jersey law, the employment-at-will doctrine provides that "an employer may fire an employee for good reason, bad reason, or no reason at all" unless prohibited by law or public policy. Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 552 (N.J. 1994); see also Silvestri v. Optus Software, Inc., 814 A.2d 602, 607 (N.J. 2003). Either party may terminate an employment relationship at will unless an agreement exists between the parties that provides otherwise. Varrallo v. Hammond Inc., 94 F.3d 842, 845 (3d Cir. 1996) (applying New Jersey law).

In certain circumstances, a company's employment manual contractually can bind the company notwithstanding its inclusion of a disclaimer of a creation of enforceable rights. Geldreich v. Am. Cyanamid Co., 691 A.2d 423, 426 (N.J. Super. Ct. App. Div. 1997). In order not to create a binding obligation on the company, the language in the manual "must be such that no one could reasonably have thought it was intended to create legally binding obligations." Id. at 427.

The only statement in the employee handbook to which Monaco points as creating a binding contractual obligation between him and AGAC is the general language on the same page as the table of contents that the company "complies with all applicable laws regarding equal employment opportunities without regard to . . . age . . . ." J.A. at 206; appellant's br. at 21. But this statement merely sets forth that AGAC strives to comply with its legal obligations, nothing more, and "no one could reasonably have thought it was intended to create legally binding obligations," beyond those the law already imposed. Geldreich, 691 A.2d at 427.

If we were to agree with Monaco that the quoted provision could be the predicate for a breach of contract claim, individuals bringing employment discrimination cases in New Jersey where an employment manual contained such a provision could as a matter of course assert both statutory discrimination and breach of contract

claims based on the employer's same underlying conduct. In order to prove the breach of contract claim the plaintiff would be required to prove the underlying discrimination claim by showing how the employer's actions violated the anti-discrimination laws. We reject Monaco's attempt to create two causes of action where he is only able to assert one. We are satisfied that New Jersey law does not provide a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employee handbook where the alleged discrimination would be in violation of the NJLAD.[16] Such a breach of contract cause of action would add nothing to the statutory cause of action. Moreover, even if such a cause of action could exist, Monaco's case would fail because he cannot demonstrate that AGAC was guilty of age discrimination. We therefore will affirm the district court's grant of summary judgment on Monaco's

breach of contract claim.[17]

## IV. CONCLUSION

In reaching our conclusion we point out that the facts of this case demonstrate why a terminated plaintiff should not be able in a <u>McDonnell Douglas</u> burden shifting case to demonstrate a prima facie case of age

---

[16]If the AGAC employee handbook stated that the company does not discriminate on the basis of some characteristic not covered by the NJLAD, then an individual might be able to assert a breach of contract claim on that basis. However, that is not the case here as the NJLAD prohibits the type of discrimination Monaco claims exists in this case and the language of the handbook merely states that AGAC complies with all applicable anti-discrimination laws.

---

[17]The district court held in the alternative that even if the language of the handbook could create a binding contractual obligation, two disclaimers in the handbook would have prevented Monaco from being able successfully to assert a breach of contract cause of action. However, as stated above, the only statement to which Monaco points as creating a contractual obligation between him and AGAC is the statement in the handbook that AGAC "complies with all applicable laws regarding equal employment opportunities without regard to . . . age . . . ." J.A. at 206. Clearly, AGAC could not disclaim its legal duty to comply with the NJLAD. Therefore, to the extent the district court relied on the disclaimer language in the AGAC handbook in granting summary judgment against Monaco on his breach of contract cause of action, it erred. But the error is harmless for, as stated above, the language in the AGAC handbook tracked the requirements of the NJLAD and did not create any binding legal obligations beyond those already established under the NJLAD.

17

discrimination without showing a difference in age between him or her and the replacement employee sufficient to support an inference of age discrimination or, in the circumstance that he or she was discharged in a reduction in force, showing that the employer retained someone similarly situated to him or her sufficiently younger to permit the drawing of such an inference. While we can understand Monaco's frustration after losing his position after so many years, the fact is that nothing in the record could support drawing an inference that age played any factor in AGAC's decision to terminate his employment. In view of all the reasons we have set forth, we will affirm the order of the district court granting summary judgment entered October 25, 2002.