

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2006

# Leyva v. Computer Science

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1622

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Leyva v. Computer Science" (2006). *2006 Decisions*. Paper 1475.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1475

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-1622

———


MAUREEN E. LEYVA,
                    Appellant

v.

COMPUTER SCIENCES CORPORATION,
a Nevada corporation


———

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 04-cv-00002)
District Judge: Honorable Kent Jordan


———

Submitted Under Third Circuit LAR 34.1(a)
February 28, 2006

Before: SLOVITER, FUENTES, Circuit Judges, and BRODY,* District Judge

(Filed: March 7, 2006)

OPINION

———

————————————

* Hon. Anita B. Brody, United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge

Appellant Maureen Leyva alleges that her former employer, Computer Sciences Corporation ("CSC" or "the Company"), violated her rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), and breached the implied covenant of good faith and fair dealing.[1]  The District Court granted CSC's Motion for Summary Judgment with respect to both of these claims.  Leyva timely appealed.

## I.

Leyva worked for CSC as a Developer from August 4, 1997 to June 19, 2002; she was an at-will employee.  Leyva's performance reviews throughout her employment period were generally positive, but she had a history of strained relations with supervisors and co-workers.

By the Spring of 2002, the project to which Leyva was assigned as an "Application Architect"(the "GTS project"[2]) began moving from its "development" phase to its

---

[1] Leyva's two other allegations have been dismissed and are not at issue in the present appeal.  On March 4, 2004, the District Court granted CSC's Motion to Dismiss Leyva's claim of retaliatory discharge in violation of the ADEA. The parties stipulated on October 25, 2004 that Leyva's claim of constructive discharge in violation of the ADEA was dismissed with prejudice.

Leyva has abandoned her state law claim that CSC breached the covenant of good faith and fair dealing by failing "to identify or argue [the] issue in h[er] opening brief;" such failure "constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

[2] The Global Treasury System project involved selecting, developing, and implementing a technological solution to the

"support" phase. CSC informed Leyva that her development skills soon would no longer be needed on the GTS project and transferred Kerri Siers to the project under the title "Application Support Architect."

At a meeting CSC convened on April 12 between Leyva and her managers to address Leyva's concerns about the addition of Siers to the project, Jane Reese, one of Leyva's managers, told Leyva that she could remain on the project "beyond the July/August timeframe," but that she wanted to see improvements in Leyva's working relationships.[3] Reese told Leyva that the interpersonal relationships between her and others on the GTS project were "unacceptable." App. at 134, 284.

In response to Leyva's request for examples of how her working relationships had been "unacceptable" and what types of improvements were expected of her "if [she was] to stay with the [GTS project] beyond the July/August timeframe," a second meeting was planned for June 14, 2002 between Leyva, Reese, and Maureen Summers (a Human Resources employee and manager on the GTS project). In the interim, Leyva spoke with Reese's boss and told him she wanted to stay on the GTS project "to at least make [her pension] vesting [date]." App. at 187.

At the June 14 meeting, Reese told Leyva that she did not "positively affect others," "couldn't work with others," "wasted people's time," and did not communicate

accounting needs of DuPont, one of CSC's customers.

[3]Leyva agreed with Reese's assessment of what Leyva should do to improve her working relationships, and admitted that her working relationships were "not good in some instances" and were in need of improvement.

3

effectively with others on the project, presenting several emails as examples of Leyva's behavior. App. at 286. There was no deadline set for improvements and Leyva thanked Reese and Summers for their recommendations and observations. The parties agree that Leyva was never pressured to resign during the June 14 meeting, and that nobody at the meeting told her she was being fired.

Later that afternoon, Leyva called Summers from her home and told Summers that she felt the meeting had been a "blistering attack" on her, App. at 290, and that she was going away for the weekend to recuperate. There is a dispute as to whether Leyva resigned during this conversation, a dispute we need not resolve.

Leyva argues that because she "believed [CSC was] firing [her]" at the June 14 meeting, Leyva told Summers during their phone conversation that she "was going to drop off [her] computer and badge on Monday." App. at 291. It is undisputed that on Sunday, June 16, 2002, Leyva went to CSC to drop off her home-use work computer and, according to her, to "pick up some papers and things that [she] had at the office," going on Sunday because she didn't want to see anyone in the office. App. at 292. Security personnel prevented her from entering the building. Leyva left her CSC identification badge and her computer with the security officer because it "was useless, because they wouldn't let me in." App. at 295.

Leyva did not return to work on Monday, June 17, 2002 because she was "totally exhausted." That day, Summers called Leyva to ask how she felt and request that Leyva send an email to CSC; Leyva did not do so. On Tuesday morning, June 18, Leyva called

4

Summers and told her that she "needed to take a leave or some time off;" Summers suggested that Leyva contact the Employee Assistance Program (EAP). App. at 294. EAP told Leyva she was not eligible. She also called her managers, including Reese and Summers, and left voicemail messages asking them to "please" let her stay on long enough to "get [her] vesting." App. at 188.

Leyva never returned to CSC. On Wednesday, June 19, 2002, Summers called Leyva and told her to submit a resignation letter by five o'clock that afternoon because the management was meeting the following day. Leyva asked whether she could submit a resignation effective August 6, her pension vesting date. Summers told her "that if [she] submitted a resignation letter, [she] could be allowed to wrap up things with the client and keep [her] vesting." App. at 296. Based on this information, Leyva believed that "when [she] signed the resignation letter [she] would be getting the vesting." App. at 312. That same day, Leyva sent an email to Summers stating:

> Thank you for your voicemail today to my home which included the indication that an 'effective date' consideration could be presented to the Management Team. Below is the Resignation letter with [*sic*] has the effective date to be presented to the Management Team. . . .
>
> I submit my resignation as Senior Member of the Programming Staff from Computer Sciences Corporation with an effective date of August 6th, 2002.
>
> My 5-year vesting date at CSC is August 4, 2002, and that is the reason for first week of August effective date request.

App. at 69-70. The following day, the CSC management team considered the letter and accepted Leyva's resignation effective June 19, 2002, the date of her resignation letter, rather than on the date she had requested.

5

Leyva filed her complaint against CSC and, after discovery was concluded, the District Court granted CSC's motion for summary judgment. The District Court held that Leyva had not made out a prima facie case of age discrimination because there was no genuine issue of material fact as to whether she had suffered an adverse employment action. It concluded that Leyva had "raised no more than a scintilla of evidence" against "a wealth of evidence overwhelmingly demonstrat[ing] that [she] resigned on [June] 14th." Moreover, it noted that "[e]ven assuming . . . that an issue of material fact existed as to whether [Leyva] resigned on June 14th, it is uncontested that she sent a resignation letter to [CSC] on Wednesday, June 19th, and that is dispositive" because "[a]n employer's decision to accept a resignation immediately, rather than accepting an employee's request that the resignation be effective at a future date, does not constitute an adverse employment action." App. at 21-23 (citing Wynn v. Paragon Sys., 301 F. Supp. 2d 1343, 1354 (S.D. Ga. 2004)).

## II.

We exercise plenary review of the District Court's grant of summary judgment, applying the same standard of review which the District Court should have applied. MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d Cir. 2005). Summary judgment should be awarded when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review all evidence in the light most favorable to, and

6

draw all reasonable inferences in favor of, the non-moving party (i.e., Leyva). MBIA, 426 F.3d at 209. The existence of a "mere scintilla of evidence in support of [a] nonmovant's position will be insufficient" to withstand a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, in determining whether more than a scintilla is extant, a court must "not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998); accord MBIA, 426 F.3d at 209.

The ADEA prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where, as here, a plaintiff does not have direct evidence of age discrimination, we employ a three-step burden-shifting approach under McDonnell Douglas v. Green, 411 U.S. 792 (1973). Fakete v. Aetna, Inc., 308 F.3d 335, 337-38 (3d Cir. 2002). Leyva must first establish a prima facie case of age discrimination by showing that: (1) she was at least forty years of age at the time she was allegedly discharged; (2) she was qualified for the position from which she was allegedly discharged; (3) she suffered an adverse employment action (e.g., discharge); and (4) her "employer retained someone similarly situated to [her] who was sufficiently younger." Monaco v. American General Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004). If Leyva makes her prima facie showing, the burden shifts to CSC to "proffer a nondiscriminatory reason for its adverse employment action." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1084 (3d Cir. 1996) (en banc). If CSC meets this burden,

7

> [Leyva may] defeat summary judgment . . . [by] point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

In the present case, the District Court held that Leyva had not made out a prima facie case because there was no genuine issue of material fact as to whether she had suffered an adverse employment action. Indeed, the question of whether Leyva has established the third and fourth prongs of her prima facie case remains disputed by the parties. However, assuming arguendo that Leyva has made a sufficient prima facie case to survive summary judgment, she failed to meet her burden under Fuentes to show a genuine issue of fact that CSC's stated reasons for her termination were pretextual.

CSC has proffered as its legitimate, non-discriminatory reasons for Leyva's departure the following: (1) Leyva's strained interpersonal relations with her co-workers (and failure promptly to seek feedback about this problem), (2) Leyva's inability effectively to transfer knowledge to other members of the GTS project, and (3) the fact that the GTS project was moving into a "support" phase in which her "development" skills were no longer needed. Therefore, we review whether Leyva has met her burden to create a triable issue that CSC's legitimate reasons for discharging her were pretextual.

Under the first Fuentes prong for determining pretext, Leyva claims that there are weaknesses and implausibilities in CSC's proffered reasons for its adverse employment action. However, there is insufficient evidence to reasonably establish such

8

implausibility.[4] (See generally Appellee's Br. 18-21, 28-29.) Leyva also presents

insufficient evidence of pretext under Fuentes's second prong—i.e., that discrimination

was more likely than not a motivating factor for her discharge.

Leyva makes two arguments under the second Fuentes prong. First, Leyva argues

that the fact that she was terminated six weeks shy of her vesting date is evidence of

discrimination. However, under CSC's plan, the vesting of an employee's pension

depended on the employee's completion of five years of service at CSC, not age. As the

Supreme Court has stated, "Because age and years of service are analytically distinct, an

employer can take account of one while ignoring the other, and thus it is incorrect to say

that a decision based on years of service is necessarily 'age based.'" Hazen Paper Co. V.

Biggins, 507 U.S. 604, 611; see also Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144,

152 (5th Cir. 1995) (holding that the consideration of "fast approaching eligibility for

retirement benefits" in making a termination decision is not age discrimination); Sullivan

v. Standard Chlorine, 845 F. Supp. 167, 181 n. 12 (D. Del. 1994), aff'd without op. No.

94-7220, 1995 U.S. App. LEXIS 5122 (3d Cir. Feb. 24, 1995).

Under the second Fuentes prong, Leyva also argues "that [CSC] treated other,

similarly situated persons not of h[er] protected class more favorably." Fuentes, 32 F.3d

---

[4] For example, Leyva unpersuasively claims: (1) that her one request for feedback—on June 14, 2002—demonstrates that CSC's general assertion she failed to seek feedback is pretextual; and (2) that CSC's claim that Leyva's interaction with co-workers involved too much unnecessary explanation and not enough explanation where it was actually needed is "logically inconsistent." Appellant's Br. at 19-20.

9

at 765. However, Leyva points to no, or, at most, <u>de</u> <u>minimus</u>, evidence to support this argument. She cites only two events in which she was similarly situated to a co-worker younger than she,[5] and neither supports her claim that CSC was biased against her on the basis of age. First, Leyva argues that she was not given a "robust" enough computer to do her work. Although Leyva's computer did have an older operating system than those of three of her younger co-workers, she eventually was given a new computer.[6] Second, Leyva points to evidence that Ray Netta, a younger co-worker, was given support staff

_____

[5] In the two other events she references concerning the second <u>Fuentes</u> prong, Leyva was *not* similarly situated to the younger employees in question. First, she argues that she was treated differently than younger workers in terms of "comp time." She argues that while younger co-workers were allowed comp time to have Fridays off, work part time, or take on-line courses, she was only allowed two days off for Christmas in 2001 despite the fact that she requested three and was never offered comp time for an on-site residency for which she expended vacation days. On its face, these were not similar situations. There is no evidence that Leyva would have been treated differently than the younger workers if she had asked for comp time for comparable reasons. Second, Leyva argues that CSC's scrutiny of her time management exceeded its scrutiny of Julie Meluskey, a younger co-worker, because Leyva was criticized for using her email account inappropriately, whereas Meluskey was *not* criticized for "for being on the phone a lot and having friends visit her." Appellant's Br. at 18 (citing App. 302-303). This comparison fails because the two co-workers were not similarly situated: CSC reprimanded Leyva for one indiscretion and failed to reprimand Meluskey for an entirely *different* indiscretion. In its brief, CSC points to record evidence showing that Leyva's allegations of discriminatory treatment are inaccurate.

[6] Leyva herself points to testimony that CSC also experienced delays in updating computer software for young employees. (Appellant's Br. at 22 (citing App. 411-12).)

10

while she was not. This single instance of favorable treatment granted to only one younger co-worker (Leyva has not alleged other younger co-workers were provided support staff), is weak evidence of age discrimination.[7] There is nothing to show that CSC treated her differently than similarly situated younger employees in these minor respects because of age. In short, Leyva did not provide a sufficient basis for a reasonable fact-finder to determine "that an invidious discriminatory reason was more likely than not a motivating or determinative cause [of Leyva's discharge]." Fuentes, 32 F.3d at 764.[8]

We will affirm the District Court's grant of summary judgment to CSC on the grounds that Leyva has failed to create a triable issue that CSC's legitimate, non-discriminatory reasons for discharging her were pretextual.

---

[7] Moreover, Leyva has not provided any evidence to rebut CSC's assertion that budgetary constraints, a non-discriminatory motive, prevented it from providing support to employees other than Netta.

[8] In granting summary judgment, the District Court found support in Leyva's statements to a private psychiatric facility, where she went for psychological help, that "she resigned from her job"and that she "quit Friday." App. at 462, 463. The parties gave considerable attention to whether this evidence was properly considered. Because we do not rely on that evidence, we need not discuss that issue.