NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3647
_____

AMY DECAROLIS,
                    Appellant

v.

PRESBYTERIAN MEDICAL CENTER OF THE
UNIVERSITY OF PENNSYLVANIA HEALTH
SYSTEM, D/B/A Penn Presbyterian Medical Center
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-11-cv-01422)
District Judge:  Honorable Legrome D. Davis
Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2013

Before:  CHAGARES, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: January 27, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

        Plaintiff Amy DeCarolis appeals the District Court's grant of summary judgment

in favor of the defendant, Presbyterian Medical Center of the University of Pennsylvania

Health System ("Presbyterian").  DeCarolis worked as a nurse at Presbyterian until May

2009, when her employment was terminated.  She filed a complaint alleging that her

termination occurred because of her race, in violation of Title VII and Pennsylvania state law. For the reasons that follow, we will affirm the judgment of the District Court.

I.

Because we write for the parties, we recount only those facts essential to our disposition. DeCarolis began to work at Presbyterian as a nurse in August 2001. In September 2008, she submitted a letter of resignation that identified October 30, 2008, as her last day of work and indicated that she had accepted a position in the Pulmonary Practices Department at the University of Pennsylvania Health System. DeCarolis was then offered another nursing position in Presbyterian's Urology Department. She accepted that position and turned down the Pulmonary job. A hiring freeze prevented DeCarolis from starting in the Urology Department. Though DeCarolis and her existing supervisors took some interim measures, the hiring freeze continued and the position in the Urology Department never materialized. After DeCarolis had been unemployed for approximately one month, she returned to the hospital to discuss a potential position in a new unit. While there, she ran into Myra Cain-Houston, who suggested that she return to her former unit with Cain-Houston as her supervisor. DeCarolis agreed and returned to work in that unit in early 2009 as a mobility pool nurse.

The incident that triggered DeCarolis's eventual termination from that position occurred in May 2009. While at work, DeCarolis opened an email from her father that contained statements critical of President Obama's recent election. The email included a letter from a CFO who needed to lay off employees because "our taxes and government fees will increase [i]n a BIG way." Appendix ("App.") 464. The email continued:

2

> So, this is what I did. I strolled thru [sic] our parking lot and found 8 Obama bumper stickers on our employees' cars and have decided that these Folks will be the first to be laid off. I can't think of a more fair way to approach this problem. These folks wanted change; I gave it to them.

App. 464-65. Several of DeCarolis's coworkers saw this email, including an individual named Romayne Hopkins.[1] Hopkins was offended by the email and reported to Cain-Houston, their supervisor, that DeCarolis had circulated a racially offensive email. DeCarolis then met with Cain-Houston and later Kia Logan, a Human Resources Manager who investigated the incident.

Portions of DeCarolis's meeting with Logan generated her complaint. According to DeCarolis, Logan read the email and suggested that "President Obama gets picked on because of the things, not the — not the things that he's doing for our country, but because he's black." App. 194. Logan denies making such a comment. Logan later met with Hopkins, who again recounted her version of events, as well as another employee who found the email inappropriate, and another who explained that DeCarolis did not endorse the things her father sent her.

Logan, Cain-Houston, and Wanda Watlington, who was Cain-Houston's supervisor, then met to determine the appropriate course of disciplinary action.[2] They decided to terminate DeCarolis because her circulation of the email was "inappropriate and unprofessional." App. 432. Though the hospital had a progressive discipline policy, that policy did not apply to DeCarolis, who was a per diem employee at that time.

---

[1] Additional details regarding the circulation of the email are disputed but immaterial.
[2] Both parties agree that these individuals were present at the meeting. The relevant witnesses had differing recollections as to who else attended.

DeCarolis brought the current action against Presbyterian in February 2011. A subsequent amended complaint sought relief under Title VII and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-63 and alleged racial discrimination with respect to the termination of DeCarolis's employment and breach of contract. Presbyterian moved for summary judgment and the District Court granted the motion.

DeCarolis filed this timely appeal.

II.[3]

We exercise plenary review over a district court's grant of summary judgment and will apply the same standard as the District Court. Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013). The District Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute or issue "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). We will view the record in the light most favorable to the non-moving party. Id.

We consider first DeCarolis's claim of "reverse" racial discrimination. Under Title VII, it is unlawful "to fail or refuse to hire or to discharge any individual, or

---

[3] The District Court had jurisdiction over DeCarolis's Title VII claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over DeCarolis's state law claim pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over DeCarolis's appeal pursuant to 28 U.S.C. § 1291.

4

otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); see also Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-93 (2003). We will examine each theory that DeCarolis contends could support a Title VII claim of unlawful discrimination based on race: a mixed-motive theory and a disparate treatment theory.

A.

A Title VII plaintiff who asserts a mixed-motive theory of employment discrimination, contends that "both legitimate and illegitimate reasons" motivated the employment decision. Id. at 213; see also 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). A plaintiff who proceeds on a mixed-motive theory must "present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (quotation marks omitted). Once a defendant presents "sufficient 'direct' evidence of retaliatory animus . . . the burden of production and risk of nonpersuasion shift to the defendant, which must show that, even if retaliation was a motivating factor in the adverse employment decision, it would have made the same employment decision in the absence of retaliatory animus." Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512-13 (3d Cir. 1997).

5

The evidence that a plaintiff must present "must be such that it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Id. at 513 (quotation marks omitted); see also Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010) (explaining that the direct evidence requirement creates a "high hurdle" for plaintiffs). Statements by individuals involved in the termination process may constitute direct evidence of discriminatory animus. See Fakete v. Aetna, Inc., 308 F.3d 335, 338-39 (3d Cir. 2002).

In Fakete, this Court held that "statements of a person involved in the decisionmaking process" could provide direct evidence of discrimination, if that evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it when he made the challenged employment decision." Id. (quotation marks omitted). We adjudicated a claim in Fakete brought under the ADEA, which uses the same framework, originally announced in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as Title VII unlawful termination cases. In Fakete, the supervisor directly addressed the impermissible factor (age), commenting that he was "'looking for younger single people that will work unlimited hours.'" 308 F.3d at 336. The supervisor then clearly set forth the implications of that statement, explaining that, as a consequence, "Fakete 'wouldn't be happy [at Aetna] in the future.'" Id. at 339 (alteration in original).

Here, DeCarolis, who is white, asserts that she has set forth sufficient direct evidence of discrimination to survive summary judgment on a mixed-motive theory. In support of that contention, DeCarolis directs the Court to Logan's comment about

6

President Obama.  We agree with the District Court's well-reasoned conclusion that the

comment does not constitute direct evidence of discrimination:

> [T]he statement in question does not imply that DeCarolis is a less desirable employee because of her race.  Rather, the comment expresses Logan's viewpoint on criticism of Obama.  It was a direct response to the language of the email and is most fairly characterized as a criticism of racism.  <u>At most, a reasonable jury may infer that Logan wrongly characterized all white people as judging Obama for the color of his skin and therefore may infer bias.  However, the statement fails the second prong of the Fakete analysis because it does not lead to a rational presumption that this bias motivated the employment decision.</u>  DeCarolis undisputedly circulated an email that discussed Obama and racially offended at least one colleague.  Logan made the statement in response to seeing the email, during a conversation in which DeCarolis admitted to circulating the email.  Thus, at most, a reasonable jury could find that Logan acted against DeCarolis because her actions suggested that she wrongly judged Obama on the basis of his skin color and/or was racially insensitive or racist — not that Logan acted against DeCarolis because she was white. . . .  [T]hough the statement mentions race, because it focuses on racism and was made in response to DeCarolis's act of circulating the email, it does not demonstrate that discrimination against white people was more likely than not the motivating factor in the decision to terminate the plaintiff.

App. 12-13 (emphasis added).  DeCarolis has thus failed to provide evidence that her

supervisors "relied on [her] race" when deciding to terminate her.  <u>Anderson</u>, 621 F.3d at

270.

The situation here is similar to <u>Hanners v. Trent</u>, 674 F.3d 683, 693-94 (7th Cir.

2012).  In <u>Hanners</u>, the plaintiff sent an email that described types of stereotype, fictitious

"Barbie dolls" that had various ethnic, economic, and racial characteristics.  Certain

7

individuals reported that they found aspects of the email to be offensive and the plaintiff was fired. The plaintiff relied upon conversations about the content of the email to support his claim that his termination was due to his race. The <u>Hanners</u> court noted that the defendants' discussions about the ethnic and racial overtones of the email did not prove that his termination was due to his race rather than nature of his conduct (sending the inappropriate email). Similarly, Presbyterian decisionmakers and other employees were upset by the content of the e-mail DeCarolis circulated, this discord led to her termination, and there is no evidence to suggest that the focus of their comments or actions was related to DeCarolis's race as opposed to her conduct.

We will therefore affirm the District Court's grant of summary judgment to Presbyterian on this basis.

B.

DeCarolis argues in the alternative that even if she did not present sufficient "direct evidence" of discrimination to establish a Title VII claim on a mixed-motive theory, she can nonetheless succeed on a disparate treatment theory of discrimination.

In the absence of direct evidence of discrimination or retaliation, a plaintiff may prove her claim according to the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[4] Under <u>McDonnell Douglas</u>, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination or retaliation. <u>Id.</u> at 802. If the plaintiff succeeds, the burden of production shifts to the

---

[4] This burden-shifting framework applies to cases of racial discrimination regardless of the race of the plaintiff. <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 160-61 (3d Cir. 1999).

employer to articulate a legitimate, nondiscriminatory reason for its decision. Id. Once the employer meets its "relatively light burden," the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Accordingly, once an employer has proffered a legitimate, nondiscriminatory reason, the plaintiff "generally must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. at 762. Because the ultimate issue is whether "discriminatory animus" motivated the employer, it is not enough to show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations omitted). Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. Id.

In support of her claim, DeCarolis relies on the deposition testimony of Hopkins, the employee that reported DeCarolis's circulation of the email. Hopkins stated that, in her view, individuals who do not support President Obama do not support him because he is black. However, Hopkins's views shed no light on the views of those individuals responsible for DeCarolis's termination, who have given a reason for DeCarolis's termination that does not suggest impermissible racial considerations. DeCarolis thus fails to show evidence of racial animus. Even assuming, as the District Court did, that

9

DeCarolis could establish a prima facie case of discrimination, Presbyterian has articulated a legitimate non-discriminatory reason for its actions: DeCarolis was terminated for circulating inappropriate material at work. DeCarolis has not pointed to evidence from which a reasonable factfinder could conclude that this reason was fabricated or that discrimination was likely the motivating factor of DeCarolis's termination. Accordingly, because we conclude that DeCarolis failed to demonstrate that Presbyterian's legitimate non-discriminatory reason for her termination was not a pretext for discrimination, we will affirm on this basis as well.

## C.

DeCarolis also sought relief pursuant to the PHRA. Because the District Court rightly concluded that "'[c]laims under the PHRA are interpreted coextensively with Title VII claims,'" App. 25 (quoting Atkinson v. Lafayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006)), we will uphold the District Court's grant of summary judgment on DeCarolis's PHRA claim for the reasons set forth above.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.